PERRY HICKS, Plaintiff-Appellant, v. ROBERT HENDRICKS, Defendant-Appellee.

(No. 74-407; ▮▮▮▮▮▮

Fifth District—October 29, 1975.

Cohn, Carr, Korein, Kunin & Brennan, of East St. Louis (Rex Carr, of counsel), for appellant.

Freeark & Harvey, P. C., of Belleville (Ray Freeark, of counsel), for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Plaintiff-appellant, Perry Hicks, appeals from a judgment of the Circuit Court of St. Clair County entered on a directed verdict in favor of defendant-appellee, Robert Hendricks, on a count charging willful and wanton misconduct and on a jury verdict in favor of defendant on a count charging negligence.

The case arose from a collision between automobiles driven by plaintiff and defendant at the intersection of 71st Street and St. Clair Avenue in East St. Louis, Illinois. Count I of the complaint alleged that defendant was guilty of one or more acts of negligence. Count II alleged that defendant was guilty of willful and wanton misconduct in failing to keep a proper lookout, operating his automobile in a reckless manner, driving his automobile at excessive speed (70 miles per hour), failing to stop or swerve to avoid the collision, and proceeding through a yellow caution light with utter and conscious disregard of the consequences. The acts alleged as willful and wanton misconduct in Count II are essentially the same as those charging negligence in Count I.

The court granted defendant's motion for a directed verdict with respect to Count II of the complaint, but denied the motion with regard to Count I and submitted the issue to the jury. The jury returned a verdict for the defendant.

Plaintiff was driving south on 71st Street. Traffic on 71st Street was controlled by stop signs on the north and south and a flashing red light hanging in the median. St. Clair Avenue is a four-lane divided preferential highway and had a speed limit of 65 miles per hour at the time of the accident; it is divided by a median 18 feet wide containing left turn lanes both east and west of 71st Street. Traffic on St. Clair Avenue is controlled by yellow flashing lights. Each of the four lanes of St. Clair Avenue is 11-12 feet wide while 71st Street is 24 feet wide.

Plaintiff testified that he stopped at the stop sign on the north side of St. Clair Avenue and waited while two cars passed from east to west. He then crossed the westbound lanes of St. Clair Avenue and entered the median at about 3-4 miles per hour and slowed, at which time he saw two cars coming from his right, one in the left hand lane approximately 350 feet away, and the other in the right hand lane about 300 feet away. Plaintiff then proceeded across the eastbound lanes of St.

Clair Avenue and was struck in the right rear by the automobile driven by defendant.

There is some confusion in the record as to when defendant first saw plaintiff enter his side of the highway. Michael Barger, one of the passengers in defendant's car, testified defendant was 300-400 feet away when he first saw plaintiff's car cross the westbound lanes and was 100 feet away when he saw plaintiff's car enter the eastbound lanes of the highway. As noted by plaintiff's counsel, this testimony was in conflict with Barger's earlier deposition, in which he had stated defendant was 300 feet away when he saw plaintiff's automobile enter their half of the highway. Defendant testified that he first saw plaintiff cross the westbound lanes of St. Clair Avenue when he was 300 feet away and that he saw him enter the median when he was 150 feet away. He further testified he was traveling about 60 miles per hour as he approached the intersection; Barger testified that he did not think defendant was traveling over 65 miles per hour as he approached the intersection. Plaintiff stated that he did not know how fast the cars were traveling.

There is also some confusion as to what took place after defendant saw plaintiff's automobile. Barger testified they were about 50 feet away from plaintiff when defendant first applied his brakes and that they were traveling 45 miles per hour at the time of impact. He further testified that he thought defendant sounded his horn for 300 feet before the impact and swerved to avoid the accident. Defendant testified that he took his foot off the accelerator when he was about 300 feet from the intersection and that at 150 feet, when he saw plaintiff enter the median, he put his foot on the brake pedal although he did not brake at that time. He was 85-100 feet from plaintiff when he fully applied the brakes and began sounding his horn. Defendant stated he then swerved to his right and was traveling 50-55 miles per hour at the time of impact, striking the middle of the plaintiff's automobile. Plaintiff testified he did not hear the screeching of brakes. State Trooper Stanley Gula, who investigated the accident, testified that he found 10 feet of skid marks in a slightly southerly direction over the center line of the eastbound lanes of St. Clair Avenue, west of the center line of 71st Street. He also testified these skid marks could have been made before or after impact.

■■ Plaintiff first contends that the trial court erred in directing a verdict for defendant on Count II of plaintiff's complaint alleging willful and wanton misconduct. In determining this issue we must follow the rule of *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504 (1967), that verdicts should be directed only where the evidence, when viewed in the light most favorable to the opposing party, supports the moving party so overwhelmingly that a contrary verdict could never

stand. It is also settled that the court must resolve conflicts in the evidence in favor of the plaintiff, and if it finds any evidence which, if believed, could support a verdict for the plaintiff, it is error to direct a verdict for defendant. *Zank v. Chicago, Rock Island & Pacific R.R. Co.,* 17 Ill.2d 473, 161 N.E.2d 848 (1959); *Hatfield v. Noble,* 41 Ill.App.2d 112, 190 N.E.2d 391 (1963); *Barnhart v. Martin,* 327 Ill.App. 551, 64 N.E.2d 743 (1945) (abstract opinion).

■■ With these considerations in mind, we examine the record to determine whether defendant's conduct might constitute willful and wanton misconduct. The standard definition of willful and wanton misconduct was set out by the Illinois Supreme Court in *Bartolucci v. Falleti,* 382 Ill. 168, 174, 46 N.E.2d 980, 983 (1943), in which the court stated:

> "Ill will is not a necessary element of a wanton act. To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person, or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal wilfulness."

(See also *Hatfield v. Noble; Hering v. Hilton,* 12 Ill.2d 559, 147 N.E.2d 311 (1958).) Willful and wanton misconduct requires a finding that defendant was aware of a risk of harm to plaintiff which defendant could avert but acted in conscious disregard of this risk resulting in harm to plaintiff.

Construing the evidence in a manner most favorable to plaintiff, defendant was 300 feet away from plaintiff when he saw plaintiff leave the median and enter the southern half of St. Clair Avenue. Defendant was traveling 60-65 miles per hour at the time and fully applied his brakes when 50-100 feet away from the plaintiff. The day was clear, the pavement was dry, and there were no obstructions to defendant's view. Plaintiff was traveling 8-10 miles an hour when hit, having entered the southern half of St. Clair Avenue after seeing a car approaching in the left lane about 350 feet away and one in the right lane about 300 feet away.

■■ We find nothing in these facts which would support a determination by the jury that defendant was guilty of willful and wanton misconduct. Therefore, we affirm the granting by the trial court of defendant's motion for a directed verdict.

■■ Plaintiff alleged in his complaint that defendant was guilty of

willful and wanton misconduct in that he failed to "keep a lookout for other traffic on the public highway." Plaintiff offered no evidence at trial that defendant did not keep a proper lookout; rather it appears plaintiff was the one who failed to keep a proper lookout. Defendant could reasonably expect that plaintiff would yield the right of way when at 300 feet away he saw plaintiff stop before entering the northern half of St. Clair Avenue. As stated in *Rowe v. Frazer*, 83 Ill.App.2d 367, 378, 227 N.E.2d 781, 786 (1967):

> "A traveller on a preferential highway has a right to expect a car approaching along a secondary street controlled by a stop sign to obey the stop sign and yield the right of way as required by law."

Plaintiff also alleged that defendant was driving at an excessive speed. Again, no evidence was offered to support this allegation; both defendant and Barger testified that defendant was traveling 60-65 miles per hour as he approached the intersection and that he slowed as he neared it. It should be noted that driving at an excessive speed alone does not constitute willful and wanton misconduct. (*Bartolucci v. Falleti*, 382 Ill. 168, 46 N.E.2d 980 (1943); *Breslin v. Bates*, 14 Ill.App.3d 941, 303 N.E.2d 807 (1973).) Plaintiff's allegation that defendant failed to stop or swerve was directly refuted at trial; both defendant and Barger testified that defendant swerved to the right in an attempt to avoid the impact. Their testimony was corroborated by Trooper Gula, who stated that the skidmarks he found were angled across the center line of the eastbound lanes of St. Clair Avenue in a southerly direction.

■■ Similarly, plaintiff offered no evidence in support of his allegation that defendant proceeded through the yellow light controlling traffic on St. Clair Avenue without caution. Section 11—309(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1969, ch. 95½, par. 11—309(2)) provided, "When a yellow lens is illuminated with rapid intermittent flashes, drivers may proceed through the intersection or past such signal only with caution." It is clear from the record that defendant complied with this statute. When 300 feet from the intersection he took his foot off the accelerator and continued to slow down as he approached the intersection until he was forced to brake by the sudden intrusion of plaintiff's car in his lane. We are satisfied that defendant exercised sufficient caution in proceeding through the yellow light.

Finally, we come to the allegation that defendant operated his automobile in a reckless manner. Once again we find nothing in the record to support this allegation. At most, defendant may be said to have been guilty of a momentary lapse in failing to brake sooner. This alone does not constitute willful and wanton misconduct. (*Larson v. Fell*, 55 Ill.

App.2d 418, 204 N.E.2d 475 (1965); *Makas v. Pagone*, 6 Ill.App.3d 532, 285 N.E.2d 812 (1972).) In addition, we feel that in view of defendant's reasonable expectation that plaintiff would either stop in the median or turn left onto St. Clair Avenue, thus posing no risk of collision, defendant was not guilty of a momentary lapse in failing to brake sooner.

Most of the cases cited to us by the parties are cases involving the application of the guest act (Ill. Rev. Stat. 1971, ch. 95½, par. 10—201), as it existed prior to the amendment effective January 1, 1972. Prior to this amendment, a guest in an automobile was required to show that the driver was guilty of willful and wanton misconduct before the guest could recover from the driver. Our analysis of these cases makes it apparent that the felt harshness of this rule prompted courts to allow a finding of liability upon a lesser showing of willful and wanton misconduct than situations involving accidents between two drivers. (See *Hatfield v. Noble*, 41 Ill.App.2d 112, 190 N.E.2d 391 (1963).) As we have noted, the evidence in this case clearly negates willful and wanton misconduct by defendant towards plaintiff.

Our discussion has ignored the fact that the jury returned a verdict in favor of the defendant on the charge of negligence in Count I of the complaint. We have observed that the acts of negligence charged involved essentially the same conduct alleged to have constituted willful and wanton misconduct in Count II. Plaintiff has not suggested that this verdict is against the manifest weight of the evidence.

It is true that a general verdict of not guilty on Count I may have resulted from the jury's determination that the plaintiff was guilty of contributory negligence without regard to characterizing defendant's conduct as negligent, not negligent, or, perhaps, willful or wanton. This verdict does not foreclose the possibility that the jury might have found plaintiff guilty of contributory negligence but still found in his favor if defendant's conduct involved willful and wanton misconduct. We suggest that on the record before us such a possibility is too remote to merit serious consideration.

Plaintiff next argues that the trial court improperly refused to give plaintiff's Instruction No. 5, Illinois Pattern Instruction No. 5.01, which concerns the inferences to be drawn from a party's failure to call a witness. The trial judge refused this instruction because the witnesses defendant did not call were equally available to both parties.

For the reasons stated below, we find that the trial court did not err in refusing this instruction. In deciding this question, we find it unnecessary to consider defendant's motion to supplement the record.

In *Hildebrand v. Baltimore & Ohio R.R. Co.*, 41 Ill.App.2d 217, 190 N.E.2d 630 (1963), the court held that the failure to give this instruction

alone would not constitute reversible error. Our review of the cases subsequent to *Hildebrand* reveals no case in which the failure to give IPI No. 5.01 was the sole basis for reversal.

The giving of this instruction is within the sound discretion of the trial court. We would reverse only when a clear abuse of discretion appears of record; it does not so appear from this record. On the contrary, it appears that all passengers in defendant's automobile were deposed by both parties. (*Weaver v. Illinois Bell Telephone Co.*, 114 Ill.App.2d 10, 252 N.E.2d 387 (1969).) One of the passengers, Barger, was subpoened and called as a witness on behalf of the plaintiff. Nothing appears of record that would suggest that these potential witnesses were not equally available to the plaintiff. In short, we perceive no reason why Barger, produced by plaintiff, was "available" but the other passengers were not.

■■ Additionally, the testimony of the four witnesses not called can be viewed as being of a cumulative nature and, therefore, the failure to call them did not give rise to an adverse inference to defendant. *Ballard v. Jones*, 21 Ill.App.3d 496, 316 N.E.2d 281 (1974). I.P.I. No. 5.01 can be seen as a reflection of the general rule set out in McCormick's Handbook of the Law of Evidence § 272 (2d ed. Cleary 1972):

> "It is often stated that when a potential witness is available, and appears to have special information relevant to the case, *so that his testimony would not merely be cumulative,* and where his relationship with one of the parties is such that the witness would ordinarily be expected to favor him, then if such party does not produce his testimony, the inference arises that it would have been unfavorable." (Emphasis added.)

Finally, plaintiff contends that the trial court committed reversible error in giving defendant's Instruction No. 18. It instructed the jury in the language of section 11—904 of the Illinois Vehicle Code (Ill. Rev. Stat. 1969, ch. 95½, par. 11—904) that when a driver of a vehicle approaching an intersection controlled by a stop sign is involved in a collision at that intersection, such collision is prima facie evidence of that driver's failure to yield the right of way, and that this fact "together with all the other facts and circumstances in evidence [could be considered] in determining whether or not a party was contributorily negligent before and at the time of the occurrence."

Plaintiff bases his argument that giving this instruction constituted reversible error on *Johnson v. Pendergast*, 308 Ill. 255, 139 N.E. 407 (1923), and *Harris v. Piggly Wiggly Stores, Inc.*, 236 Ill.App. 392 (1925). In *Johnson*, the court found reversible error in an instruction allowing the jury to find that defendant's failure to give hand turn signals as

required by statute constituted prima facie evidence of negligence. Similarly, in *Harris*, the court reversed a judgment for plaintiff because the trial court instructed the jury that violation of a statute setting a 10-mile-per-hour speed limit in the city constituted prima facie evidence that defendant was traveling faster than was reasonable and proper. Both courts viewed these instructions as essentially directing a verdict for plaintiff on the ultimate issue of negligence because juries were unlikely to understand the term prima facie in its legal sense and appreciate the operation of the presumption it invokes, which we believe to be more properly a rule of law for the court's guidance rather than a rule of evidence.

Defendant, however, added to the statutory wording the language of IPI 60.01 that violation of the statute was just one fact which the jury must consider with all the other facts in evidence in determining whether plaintiff was contributorily negligent. In *Klinkenberg v. Horton*, 81 Ill. App.2d 152, 224 N.E.2d 597 (1967), however, the court held that despite a qualification similar to that used by defendant in this case, an instruction in the language of IPI 60.01 that driving past a yield-right-of-way sign in violation of a statute was prima facie evidence of negligence constituted reversible error. In reaching this conclusion the court emphasized that the question of where the collision occurred was controverted and was for the jury to decide. The court went on to comment that, under the facts there present, the use of the instruction could be misleading and prejudicial. The court then made clear that reversal was not required by the language of the instruction as it stated:

> "If the facts in the record has disclosed an unquestioned or relatively unquestioned factual situation, the use of the full language of the statute in such instruction might not be misleading and might not be the basis for reversal." 81 Ill.App.2d 152, 157 224 N.E.2d 597, 599.

■■ The present case presents such an "unquestioned factual situation" as the record contains uncontroverted evidence as to when and where the accident occurred. Thus, unlike *Klinkenberg*, the giving of this instruction did not preemptorily resolve a factual issue properly for the jury's determination. In addition, the last paragraph of the instruction sufficiently alerted the jury to consider the violation of the statute as just one of the facts presented; this overcame the prejudicial effect discussed in *Pendergast* and *Harris*. For these reasons, we conclude that the giving of defendant's Instruction No. 18 did not constitute reversible error.

However, this determination should not be seen as an endorsement of such an instruction. We note that the drafters of the Illinois Pattern

Jury Instructions specifically avoid the use of the phrase "prima facie evidence" in their recommended instructions. Although we do not consider the instruction to be reversible error in the instant case, we are in basic agreement with the courts in *Pendergast*, *Harris* and *Klinkenberg* that the phrase is not one easily understood by the jury and should be avoided.

For the reasons set forth above, we affirm the judgment of the Circuit Court of St. Clair County.

Affirmed.

JONES, P. J., and CARTER, J., concur.

The People of the State of Illinois, Plaintiff-Appellee, *v.* Charles Dismore, Defendant-Appellant.

(No. 74-307;

Fifth District—October 31, 1975.

Demetri Hassakis, of Mt. Vernon, for appellant.

Donald E. Irvin, State's Attorney, of Mt. Vernon (James W. Jerz and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is a consolidated appeal from judgments entered after negotiated pleas of guilty in four separate cases by the Circuit Court of Jefferson County. The defendant, Charles Dismore, was adjudged guilty of the offenses of deceptive practices, unlawful possession of instruments adapted for the use of controlled substances or cannabis by subcutaneous injection, burglary, and seven counts of forgery. The court sentenced

the defendant in accordance with the plea agreement to one year, to a fine of $65, and to costs in the amount of $22.40 on each of the misdemeanor charges. For the burglary, and for each of the seven counts of forgery, the defendant received a sentence of two to six years' incarceration. The record indicates that all the sentences imposed were to run concurrently.

The defendant raises the following issues on appeal: (1) whether the conviction for deceptive practices was void because the complaint purported to allege an offense which occurred on October 3, 1973, in violation of a statute (Ill. Rev. Stat., 1973, ch. 38, § 17—1(e)1) that had been repealed on October 1, 1973; (2) whether the convictions on the seven counts of forgery are void for reason that none of the counts charge the defendant with a criminal offense; (3) whether the trial court failed to comply substantially with the requirements of Illinois Supreme Court Rule 402; (4) whether the judgments in all four cases should be reversed because they do not conform with the court's pronouncements on January 19, 1974, or with the negotiated plea agreement, or because they did not accurately reflect the judgments of the court; (5) whether the court complied with the requirements of Supreme Court Rule 401(a) regarding waiver of counsel at the sentencing hearing.

On May 3, 1974, the defendant was brought into court pursuant to an arrest warrant served on him in response to the seven count forgery indictment. Upon being offered appointed counsel by the judge, the defendant informed the court that he would retain a private lawyer. On June 17, 1974, the defendant appeared twice in open court. At his first appearance, for arraignment on the burglary charge, the defendant was again offered counsel. The court continued the arraignment for the defendant to retain counsel until June 20. However, later that same day, the defendant appeared before another judge and requested to enter negotiated pleas of guilty in all four cases. The misdemeanor cases, deceptive practices and unlawful possession of drug paraphernalia, were charged by complaint. The forgery charges, consisting of seven counts, were by indictment, and the burglary charge was on a complaint to which the defendant waived indictment.

The defendant first contends that his conviction for deceptive practices was void because the complaint to which he entered his plea purported to allege an offense which occurred on October 3, 1973, in violation of a statute (Ill. Rev. Stat. 1973, ch. 38, § 17—1(e)1) that had been repealed on October 1, 1973. The criminal complaint charged that on October 3, 1973, the defendant committed the offense of deceptive practices in that:

"[he] did with the intent to defraud, knowingly obtain without the consent of Guy Randall, property of Wayne Shull, doing business as Shulls' West Shell Service, 3401 Broadway, Mt. Vernon, Illinois, being gasoline, having a total value of less than $150.00 by use of a credit card which was issued to Guy Randall, in violation of paragraph 17—1(e-1), Chapter 38, Illinois Revised Statutes."