DONALD TUTTLE, Plaintiff-Appellant, *v.* FRUEHAUF DIVISION OF FRUEHAUF CORPORATION, Defendant-Appellee.

First District (3rd Division)   No. 82—933

Opinion filed March 21, 1984.

William J. Harte, Ltd., and Schey, Goffen & Associates, P.C., both of Chicago (William J. Harte and Robert Schey, of counsel), for appellant.

James A. Fletcher, Bruce D. Becker, and Clay A. Tillack, all of Isham, Lincoln & Beal, of Chicago, for appellee.

PRESIDING JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Donald Tuttle, sought damages for personal injuries which occurred on July 11, 1974, when he lost control of the tractor-trailer truck that he was driving, and the vehicle went off the road and collided with a fixed object. Judgment was entered on a jury verdict in favor of defendant, Fruehauf Division of Fruehauf Corporation, the company that had repaired the trailer approximately two months before the accident. Plaintiff appeals the judgment in favor of defendant and the denial of his post-trial motion on the grounds that (1) he was entitled to a new trial on the basis of newly discovered evidence which met the exaggerated and false testimony of one of defendant's expert witnesses, (2) the court erred in allowing testimony by one of defendant's witnesses that was beyond the scope of the witness' expertise, (3) the court abused its discretion in preventing him from referring to admissions in defendant's third-party complaint, (4) the court erred in refusing his tendered Illinois Pattern

Jury Instruction regarding a party's failure to produce physical evidence in its control, and (5) the court erred in not granting his motions for a mistrial and in not giving cautionary instructions when defendant attempted to have a police report admitted into evidence and attempted to elicit testimony regarding an unrelated injury to plaintiff. We affirm.

The evidence at trial revealed that in May 1974, approximately two months before plaintiff's accident, defendant installed riser blocks on the trailer plaintiff was operating at the time of the accident. Two mechanics employed by defendant in 1974 testified that they did not remember doing the installation on this particular trailer, but that they installed riser blocks in accordance with the instructions of their foreman, John Jarosz. Their instructions were to tighten the u-bolts with an air wrench, then hit the u-bolts with a hammer and listen for a bell-like sound which indicates that the bolts are tight enough. Neither mechanic had seen any written specifications or instructions for installing riser blocks.

Plaintiff testified that in May 1974, he looked at the repair work on the trailer and saw a riser block that did not have a weld on its end and looked like it was made out of spring leaves, a type he had never seen before. On July 11, 1974, after driving the trailer with the newly installed riser blocks approximately 10,000 miles, plaintiff was in fourteenth gear, going 40 to 45 miles per hour, heading downgrade into a bend on a two-lane road in Ohio with which he was familiar. He heard a noise, then felt a drag and a sudden pull to the right. The truck left the highway, went down in a ditch and hit a utility pole.

Plaintiff's expert witness, Lester Kolom, an industrial engineer, testified that it is desirable that components such as riser blocks be made in one piece to avoid the separation and shift of the four pieces of a leaf spring. In addition, Kolom stated that most riser block manufacturers provide specifications for installing riser blocks with u-bolts, including a narrow range for tightening the u-bolts that hold the riser blocks. According to Kolom, if the u-bolt is too loose, it loosens more and drops off. Kolom testified that torque specifications can be met with an air wrench, but an air wrench has to be used carefully so that it will not apply too much torque with resultant failure. Kolom believed that a torque wrench should be used whenever u-bolts are installed on an assembly trailer to insured the u-bolts are tightened to the proper torque, and that without a torque wrench, even an experienced mechanic cannot really tell whether the bolt is properly tightened. Further, based on his reconstruction of the accident, Kolom concluded that the accident was caused by the failure of the riser block

or u-bolt under the rear axle of the trailer on the right-hand side. Kolom also testified that a crack in the leaf of the spring in the right front wheel of the tractor would have little effect on the operation of the tractor-trailer unless the vehicle was driven over an extreme drop-off or pothole.

John Jarosz, who in 1974 supervised defendant's shop where the trailer had been repaired, testified that riser blocks were installed according to his instructions. He told the mechanics to tighten the u-bolts with an air wrench up to its limit and then check them by tapping the u-bolts with a hammer. Torque wrenches were sometimes used to check the tightness. In May 1974, u-bolts were to be tightened to 340-350 foot-pounds, according to documents supplied by defendant, including a torque chart which was posted in the shop. The air wrenches at the shop were set for 350 to 365.

Officer Cecil Gibson, who investigated plaintiff's accident for the Seneca County, Ohio, sheriff's department, testified that he found no skid marks on the pavement and no evidence of the vehicle sliding off the road. The impressions left in the earth revealed that the wheels of the truck traveled in a fairly straight line from the time the truck left the roadway. Herbert Witt, a damage appraiser, testified that he inspected the tractor-trailer involved in the accident and found some old damage, including a broken leaf on the right spring on the tractor, and some recent damage. Witt testified that a truck with a broken leaf on the spring on the right-hand side of the front axle would pull to the right. He also testified that if riser blocks or u-bolts failed on the right rear of the trailer, rubber marks would be found on the sub-frame and none were found here. According to Witt, good mechanical practice does not require that a torque wrench be used to tighten u-bolts; pinging the metal is as accurate as using a torque wrench. If a u-bolt were not tightened according to specifications, it might come off or it might not. If it were too tight, it might strip a thread. Further, if a u-bolt with specifications of 340 to 360 torque were tightened to 320, there would be no problem. The torque could be 50 to 100 foot-pounds off and still be safe.

Finally, Milton Tennerstedt, a mechanical engineer, testified in response to a hypothetical question that, based on a series of calculations he had made, the riser blocks would not slide. Tennerstedt testified in detail regarding his calculations. He determined that 140 foot-pounds on each nut of each u-bolt represents the point where they are just in balance and will not loosen and fall off. According to Tennerstedt, the point where the nut will come loose under certain vibration conditions is very low, 10, 20, or 50 foot-pounds. Further, Ten-

nerstedt testified that with torque specifications of 340 to 360, 360 represents the value above which one begins to run some small risk of breaking the fastener, and 340 does not represent the minimum, for even under worst-case conditions, 140 foot-pounds is sufficient.

The jury returned a verdict in favor of defendant. At a hearing on his post-trial motion, plaintiff presented the testimony of design engineer Lee Rose, who stated that 140 foot-pounds and 10, 20, or 50 foot-pounds are totally inadequate torque levels under real-world driving conditions where vibration levels are extremely high. The court found that Rose's testimony merely established a difference of opinion between experts and did not establish that Tennerstedt's testimony was false. The court struck Rose's testimony and denied plaintiff's post-trial motion.

■ Plaintiff first contends that he was denied a fair trial as a result of Tennerstedt's testimony. Plaintiff maintains that he was surprised by Tennerstedt's testimony and that the testimony was exaggerated and false as demonstrated by new evidence which plaintiff discovered after trial and presented to the court during the hearing on plaintiff's post-trial motion. Thus, plaintiff argues that the court should have granted him a new trial. We disagree.

The basic requirements for a new trial on the basis of newly discovered evidence are that the newly discovered evidence be (1) of such conclusive character that it will probably change the result if a new trial is granted, (2) discovered since the trial, (3) such that it could not have been discovered before trial with the exercise of due diligence, (4) material to the issue and (5) not merely cumulative to the evidence at trial. (*Kaster v. Wildermuth* (1969), 108 Ill. App. 2d 288, 291-92, 247 N.E.2d 431, 433.) The party seeking the new trial has the burden of showing that these requirements have been met. (See *Runowicz v. Rock Island Bank & Trust Co.* (1967), 90 Ill. App. 2d 222, 227, 232 N.E.2d 459, 462.) The giving of false testimony in and of itself is not a sufficient basis for granting a new trial (*Kaster v. Wildermuth* (1969), 108 Ill. App. 2d 288, 293, 247 N.E.2d 431, 434), nor is the fact that the party was surprised at trial by testimony regarding a material fact which could not be foreseen (see *Darrough v. White Motor Co.* (1979), 74 Ill. App. 3d 560, 562, 393 N.E.2d 122, 124).

In this case, Tennerstedt testified that riser blocks such as those on the trailer here would not slide under the worst-case circumstances described in a hypothetical question. Tennerstedt also testified that the torque specifications of 340 to 360 do not represent minimum-maximum levels. According to Tennerstedt, 140 foot-pounds of torque

is sufficient, and under certain vibration conditions, nuts would only come loose with very low torques of 10, 20 or 50 foot-pounds. Plaintiff neither expressed surprise at Tennerstedt's testimony, nor requested a continuance or delay in order to obtain additional evidence. During the hearing on his post-trial motion, plaintiff presented the testimony of design engineer Rose, who stated that 340 to 360 foot-pounds is a specification range outside of which there are no allowable limits, and that Tennerstedt's figures of 140, 10, 20 or 50 foot-pounds are totally inadequate torque levels under real-world driving conditions where vibration levels are extremely high.

We agree with the court's determination that Rose's testimony merely established a difference of opinion between experts. We find nothing which suggests that Tennerstedt's testimony was false, and we believe that plaintiff failed to establish that it was false. As for Rose's testimony, we believe that plaintiff failed to establish that it could not have been discovered before trial with the exercise of due diligence. Prior to trial, plaintiff deposed Tennerstedt and examined his working papers. If Tennerstedt's testimony was such a surprise to plaintiff and was so different from what plaintiff had already learned from him, plaintiff should have requested a continuance in order to obtain rebuttal evidence. However, plaintiff did not express surprise or request a continuance. Rather, he cross-examined Tennerstedt with reference to an article which Tennerstedt had given him. Under the circumstances, we believe plaintiff failed to establish that Tennerstedt's testimony was such that, although duly diligent, plaintiff could not have discovered evidence with which to rebut it, specifically, Rose's testimony, until after the trial. In addition, considering the conclusions of Witt, which were similar to those of Tennerstedt, and the contradictory trial testimony of plaintiff's expert, Kolom, it is not clear that Rose's testimony was so conclusive that it would probably change the result upon retrial. Thus, we conclude that plaintiff was not denied a fair trial and that the court did not abuse its discretion in denying plaintiff's motion for a new trial.

Next, plaintiff argues that the court erred in allowing Witt to give opinion testimony which was beyond the scope of his expertise. Witt, a professional damage appraiser with experience driving and repairing trucks, testified that if a tractor had a broken leaf on a spring on the right-hand side of the front axle, it would pull to the right. Plaintiff maintains that with this testimony Witt effectively gave his opinion as to the cause of plaintiff's accident, something which only an accident reconstruction specialist is qualified to give. We disagree.

■ Whether a witness is competent to give an expert opinion is a

question of fact for the trial court, and the court's determination will be disturbed only upon a clear showing of an abuse of discretion. (See *Penrod v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1979), 68 Ill. App. 3d 75, 79, 385 N.E.2d 376, 380.) A witness may be qualified as an expert on the basis of knowledge obtained from study or experience or a combination of both. (See *Nowakowski v. Hoppe Tire Co.* (1976), 39 Ill. App. 3d 155, 163, 349 N.E.2d 578, 585-86.) The test is whether the witness exhibits sufficient knowledge of the subject matter to entitle his opinion to go to the jury. (*Murphy v. Hook* (1974), 21 Ill. App. 3d 1006, 1011, 316 N.E.2d 146, 151.) Here, Witt neither gave his opinion of the cause of the accident nor attempted to recreate the events of the accident. Thus, it was not necessary that he qualify as an accident reconstruction expert. (See *Finfrock v. Eaton Asphalt Co.* (1976), 41 Ill. App. 3d 1020, 1022-23, 355 N.E.2d 214, 217.) Witt simply testified, on the basis of his considerable experience driving trucks with broken spring leaves on their front axles, about the effect of a broken spring leaf on a truck's operation. We believe that the court properly concluded that Witt's experience gave him knowledge not shared by the average juror, which was sufficient to permit this testimony. We also believe that defendant's suggestion in closing argument that the broken spring leaf caused the accident constituted a permissible inference from Witt's testimony and from some of the other evidence in the case.

■ Plaintiff next contends that the court erred in preventing him from referring to admissions in defendant's third-party complaint. In its third-party complaint against Temme Standard Corporation and other third-party defendants, defendant alleged, *inter alia,* that Temme carelessly and negligently supplied defendant with defective parts, including riser blocks and springs which defendant used in repairing the trailer plaintiff was operating. Defendant also alleged that if injury or damage was suffered by plaintiff as a result of any defect in the riser blocks or springs, it was because Temme failed to supply safe and suitable riser blocks or springs. As third-party plaintiff, defendant prayed that if judgment be entered against it and in favor of plaintiff, judgment be entered in that amount against Temme and the other third-party defendants.

Plaintiff recognizes that Illinois law authorizes alternative pleading (see Ill. Rev. Stat. 1981, ch. 110, par. 2—613(b)), and therefore does not allow alternative, unverified pleadings to be used as admissions against the pleader. (See *Schusler v. Fletcher* (1966), 74 Ill. App. 2d 249, 256, 219 N.E.2d 588, 592.) However, plaintiff argues that since the allegations in defendant's third-party complaint were not

phrased hypothetically or in the alternative, they should have been viewed as admissions to which plaintiff could refer. We disagree.

Essentially, defendant's third-party complaint is an action for indemnification. In the complaint, defendant specifically requests relief contingent upon the outcome of plaintiff's action against defendant. We believe that "[a] party wishing to make alternative or contingent claims should not be placed in the perilous situation of either foregoing one claim or having one claim used against another as an admission." (*Slocum v. Ford Motor Co.* (1981), 111 Mich. App. 127, 134, 314 N.W.2d 546, 549; see *Continental Insurance Co. v. Sherman* (5th Cir. 1971), 439 F.2d 1294, 1298-99.) Moreover, we do not believe there is some magic in labeling inconsistent pleadings "alternative" or "hypothetical" which invokes the principle underlying the alternative pleading rule. (See *Slate Printing Co. v. Metro Envelope Co.* (N.D. Ill. 1982), 532 F. Supp. 431, 436.) Thus, we believe that regardless of the phrasing of the factual allegations in defendant's third-party complaint, the complaint is an alternative, unverified pleading, and the allegations in the complaint are not admissions which may be used against defendant in the original action. Furthermore, contrary to plaintiff's assertion, the allegation in defendant's third-party complaint which has the most significance with regard to the original action is stated hypothetically. As third-party plaintiff, defendant alleged that "[i]f the riser blocks or springs were defective, as alleged by the plaintiff, then it was because said riser blocks or springs were defective when sold by Temme to Fruehauf." As phrased, the allegation plainly does not admit anything. (See *Koenig v. 399 Corp.* (1968), 97 Ill. App. 2d 345, 349-50, 240 N.E.2d 164, 165-66.) We therefore conclude that the court properly prevented plaintiff from referring to defendant's third-party complaint and to the allegations contained therein.

■ Next, plaintiff argues that the court erred in refusing his tendered jury instruction (Illinois Pattern Jury Instruction (IPI), Civil, No. 5.01 (2d ed. 1971)), which allows the jury to draw an adverse inference from a party's failure, without reasonable excuse, to produce evidence in that party's control and not equally available to the other party. Plaintiff maintains that the instruction was warranted by defendant's failure to provide plaintiff with certain photographs taken by Witt which included Witt's notation of a measurement, and defendant's failure to produce the air wrenches which were used in the installation and assembly of the riser block/u-bolt on the trailer plaintiff was operating. Plaintiff contends that he was prejudiced by the failure to give IPI Civil No. 5.01 because this was a close case on the

question of liability, and that he was entitled to have the jury instructed that they could infer that the photos, notation and air wrenches, if produced, would have been adverse to defendant. We disagree.

Whether or not to give IPI Civil No. 5.01 is a decision within the sound discretion of the court and is subject to reversal only when a clear abuse of discretion appears of record. (See *Hicks v. Hendricks* (1975), 33 Ill. App. 486, 493, 342 N.E.2d 144, 149.) The instruction is only warranted when some foundation evidence is presented on each of the four following elements: (1) the evidence was under the control of the party and could have been produced with the exercise of due diligence, (2) the evidence was not equally available to the adverse party, (3) a reasonably prudent person under the same or similar circumstances would have produced the evidence if he believed it would have been favorable to him and (4) there was no reasonable excuse for the failure to produce the evidence. (See *Wetherell v. Matson* (1977), 52 Ill. App. 3d 314, 318, 367 N.E.2d 472, 475.) In addition, the instruction is not warranted when the evidence which has not been produced is merely cumulative of the facts already established. See *Hicks v. Hendricks* (1975), 33 Ill. App. 3d 486, 493, 342 N.E.2d 144, 150.

The record here does not reveal an abuse of discretion in the refusal of IPI Civil No. 5.01. While the photos and the air wrenches were most likely under the control of defendant, we do not believe there was sufficient showing that they were not equally available to plaintiff. In addition, considering the testimony regarding the photos and the wrenches, it is not clear that a reasonably prudent person would have produced the photos or the air wrenches if he believed they would have been favorable to him. Further, we believe that the additional demonstrative evidence of Witt's measurement and photos, as well as the air wrenches themselves, would only have been cumulative, adding nothing to the facts already established through testimony. (See *Pope v. St. John's Hospital* (1970), 128 Ill. App. 2d 325, 329, 262 N.E.2d 369, 372.) Moreover, even if IPI Civil No. 5.01 should have been given, the failure to give the instruction alone would not constitute reversible error in this case. See *Hicks v. Hendricks* (1975), 33 Ill. App. 3d 486, 492-93, 342 N.E.2d 144, 149.

■ Finally, plaintiff complains of the court's response to what plaintiff maintains were errors at trial. Specifically, plaintiff argues that after defendant attempted to have a police report admitted into evidence and after defendant attempted to elicit testimony from plaintiff's physician regarding an unrelated injury, the court should have granted plaintiff's motions for a mistrial or given the cautionary in-

structions which plaintiff requested. We believe that plaintiff's argument lacks merit.

The decision whether or not to grant a mistrial rests within the sound discretion of the court based on the particular circumstances of the case, and the court's ruling will not be disturbed on review absent a clear abuse of discretion. (*Benuska v. Dahl* (1980), 87 Ill. App. 3d 911, 913, 410 N.E.2d 249, 251.) A mistrial should be declared only when there is an occurrence of such character and magnitude as to deprive a party of a fair trial, and the moving party demonstrates actual prejudice as a result. (See *Benuska v. Dahl* (1980), 87 Ill. App. 3d 911, 913, 410 N.E.2d 249, 251.) Although the mere attempt to introduce a police report may be considered reversible error (*Jacobs v. Holley* (1972), 3 Ill. App. 3d 762, 763, 279 N.E.2d 186, 187), under the circumstances here, we do not believe that defendant's attempt was an occurrence of sufficient magnitude to require the declaration of a mistrial. Here, when the police report was offered, Officer Gibson had already testified at length during cross-examination by plaintiff regarding the contents of the report, and he had even read from the report. Nevertheless, plaintiff maintains that he was prejudiced because it appeared to the jury that by not allowing the police report into evidence he was trying to hide something from the jury. However, when defendant attempted to have the report admitted, the jury only heard plaintiff's counsel ask to be heard When proceedings resumed in the presence of the jury, defense counsel questioned the witness about the diagram which was part of the police report, and the diagram was admitted into evidence. Under the circumstances, we do not believe that the jury would have concluded that plaintiff was trying to hide something in the police report. Thus, we conclude that the court did not abuse its discretion in denying plaintiff's motion for a mistrial.

■ As to the court's refusal to give a cautionary instruction regarding the police report, the decision whether or not to give a cautionary instruction is within the sound discretion of the court, and the court's decision will not be disturbed on review unless the record reveals a clear abuse of discretion. (See *Donk Brothers Coal & Coke Co. v. Thil* (1907), 228 Ill. 233, 244, 81 N.E. 857, 861.) The record here reveals no abuse of discretion in the refusal to give a cautionary instruction. Under the circumstances, the court may well have concluded that plaintiff was unaffected by the attempt to have the police report admitted and a cautionary instruction was therefore unnecessary. The court might also have determined that a cautionary instruction would merely confuse the jurors especially since they had already heard much of the information contained in the police report when

Gibson testified. Thus, we conclude that the court did not abuse its discretion in refusing to give a cautionary instruction regarding defendant's attempt to have the police report admitted into evidence.

■ As to plaintiff's contentions regarding the questioning of plaintiff's doctor, since the questioning related solely to the issue of damages, an issue the jury did not reach because it found for defendant on the issue of liability, we believe that the error, if any, was harmless. See *Guenther v. Hawthorn Mellody, Inc.* (1975), 27 Ill. App. 3d 214, 219, 326 N.E.2d 533, 537.

We conclude that the errors alleged by plaintiff, whether considered individually or cumulatively, do not support the granting of a new trial. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

McNAMARA and WHITE, JJ., concur.