THOMAS S. CHUHAK, Adm'r of the Estate of Mildred Claire Lyle, Deceased, Plaintiff-Appellant, v. THE CHICAGO TRANSIT AUTHORITY *et al.*, Defendants-Appellees.

First District (5th Division)   No. 84—1024

Opinion filed February 6, 1987.

Joseph L. Goldberg, of Chicago, for appellant.

Judson H. Miner, Acting Corporation Counsel, of Chicago, for appellee City of Chicago.

William G. Clark, Jr., of Chicago, for appellee Chicago Transit Authority.

JUSTICE PINCHAM delivered the opinion of the court:

This is an appeal from a judgment entered against the plaintiff, Thomas S. Chuhak, administrator of the estate of Mildred Claire Lyle,[1] in an action for injuries Lyle allegedly sustained when she stepped from a bus operated by the defendant Chicago Transit Authority (CTA) and into a pothole located in a street of the defendant city of Chicago (city). Plaintiff contends that the trial court erred in excluding from evidence, (a) the hospital case report of the investigating-reporting officer, (b) the investigating-reporting officers' testimony of their observations of a pothole at the location where Lyle allegedly fell, and (c) testimony of the investigating-reporting officers of what Lyle told the officers about how she fell. Plaintiff further contends that the trial court erred in refusing plaintiff's instruction to the jury that upon the death of a litigant during the pendency of a lawsuit, the litigant's cause of action survives the litigant's death. Plaintiff also contends that the trial court erred in refusing to instruct the jury on the inference the jury might draw from the defendant's failure to call certain witnesses. Plaintiff finally argues for reversal that counsel for the defendant city during argument to the jury improperly read extensive excerpts of the testimony of the trial witnesses and that counsel for the defendant CTA made other prejudicial arguments to the jury.

The record establishes that on June 14, 1978, at 5 p.m. at State and Randolph streets in Chicago, Lyle exited the front door of a CTA bus. The bus had stopped at a safety island which was not raised but was flat and denoted by a sign. The front door platform of the bus was adjacent to a pothole. Lyle stepped into this pothole. As a result she fell and severely fractured her left ankle.

Approximately ten minutes later, Chicago police officers John Rossi and Gerald Murray arrived at the scene. Rossi interviewed Lyle at the scene and from his interview and observations prepared a hospital case report.

A fire department ambulance arrived and removed Lyle to Northwestern Memorial Hospital where she was first treated in the emergency room and afterwards admitted as a patient. She was treated by Dr. William Kane, a board-certified orthopedist. Dr. Kane aligned the fracture to improve the circulation of blood to the left foot, thereby reducing the possibility of the development of gangrene. The next day Dr. Kane performed surgery to repair the fracture and inserted a metal plate and screws in the ankle to hold the bone in place. Dr.

---

[1]Mildred Claire Lyle's death was unrelated to the instant action.

Kane then placed the left leg in a cast. Mildred Lyle remained in the hospital five weeks and in a cast for four or five months.

On June 14, 1978, the date of Lyle's injury and admission to the hospital, Dr. Kane took a history from Lyle in which she told Dr. Kane that she was getting off of a CTA bus, stepped into a pothole, and twisted her ankle. According to the doctor she had an immediate onset of pain and was thereafter disabled and had to be brought to Northwestern Memorial Hospital.

She was discharged from the care of Dr. Kane in March 1980, at which time her left ankle had reached a point of maximum recovery. In Dr. Kane's opinion she had permanent loss of motion in the left ankle and would have permanent pain, lack of endurance, fatigability, and reaction to wet weather and change in barometric pressure.

Before trial, the city filed a written motion *in limine* which requested, *inter alia*, that the trial court bar the admission into evidence of Lyle and Rossi's statements, contained in Officer Rossi's hospital case report, as being hearsay. After argument, the trial court held that Officer Rossi's hospital case report would be admissible with the exception of that portion which stated the cause of the injury and the following narrative in the report:

"Victim told R/Os that she was getting off bus at State and Randolph and as she stepped off of bus onto street she stepped into a pothole and broke her left ankle. R/Os did find a small pothole at the location the victim told the R/Os the fall occurred. The bus no. was 9631 run no. 604."

A sidebar conference was held prior to the testimony of Officers Rossi and Murray. The city renewed their objection to the admission of the hospital case report. The trial court again ruled that with the exception of the two mentioned portions, the plaintiff would be permitted to offer and have Rossi's report admitted into evidence.

Rossi's hospital case report was received into evidence with the portions thereof previously set forth deleted therefrom.

Joan Freeman, a passenger on the bus with Lyle, testified that she observed Lyle leave the bus and that Lyle fell in a pothole. She further described the pothole in her testimony. Freeman also testified as to the condition of the scene of the occurrence prior to and on the date of the occurrence. Shirley Maynie was also a passenger on the bus. Maynie testified that Lyle stepped off the bus and when Maynie next saw Lyle, Lyle was lying on the ground. Maynie testified to the presence of the pothole and to the condition of the scene of the occurrence prior to and on the date of the occurrence. Dr. Kane, Lyle's treating physician, testified that Lyle told him that as she was getting

off of a CTA bus in the city she stepped into a pothole and twisted her ankle.

The jury returned a verdict in favor of the defendants.

Plaintiff filed a post-trial motion, which assigned as error the trial court's failure to permit Officers Rossi and Murray to testify to Lyle's statements and the officers' observations of the pothole contained in their report. The trial court stated at the hearing on the post-trial motion:

> "All right, the second point. I do believe it was error on the Court's part not to allow the police officer to testify that he—reading from his report—that the reporting officers did find a small pothole at the location period.
>
> However, it was not prejudicial error in view of the fact that there were other witnesses who testified that there were—there was a hole or there were holes in the street. Also, the defendant driver, if I am not mistaken, Florence [*sic*], also testified that in the general area of the location there was a hole. So there was other evidence that there was a hole.
>
> Now I will still hold it was not error not to permit the police officer to be allowed to let inform the jury what the decedent told him at the scene. I still believe that I was correct in that ruling, any statements from her to him."

Before this court, plaintiff asserts for reversal that because Officers Rossi and Murray were not permitted to testify that they observed a pothole at the scene of Lyle's fall and because they were not permitted to testify that Lyle told them she fell because she stepped in a pothole, *i.e.*, the deleted portions of the officers' hospital case report, "the very cornerstone of plaintiff's case was therefore destroyed." The plaintiff also contends that the trial court's refusal to allow the deleted portions of the report into evidence, were reversible error.

The plaintiff argues two theories for the admissibility of the deleted portions of the hospital case report, namely, (1) spontaneous-declarations and (2) past-recollection-recorded exceptions to the hearsay rule.

The defendant CTA contends that plaintiff's argument, that Lyle's statements to Officers Rossi and Murray that "she was getting off of the bus at State and Randolph and as she stepped off of the bus onto the street she stepped into a pothole and broke her left ankle," were admissible as an exception to the hearsay rule as a spontaneous declaration or excited utterance, was waived by plaintiff's failure to offer these hearsay statements into evidence under spontaneous-declaration

or excited-utterance theories at trial. The defendant CTA further argues that where a party offers evidence which is generally inadmissible but may be admissible under a specific theory, the specific theory for which the evidence is admissible must be stated, otherwise the court may properly exclude the evidence.

The CTA contends further that assuming, *arguendo*, that the plaintiff properly raised the spontaneous-declaration or excited-utterance hearsay exception at trial, Lyle's statements did not fall within the spontaneous-declaration or excited-utterance exception to the hearsay rule. The CTA argues that there was no evidence which established that Lyle's statements were spontaneous declarations or excited utterances or that her statements were not made in response to inquiries by the police officers.

The defendant CTA further argues that the cases cited by plaintiff in support of her assertion that the hospital case report was admissible as Officer Rossi's past recollection recorded are inapplicable. The defendant CTA maintains that plaintiff's reliance on *Taylor v. City of Chicago* (1983), 114 Ill. App. 3d 715, 449 N.E.2d 272, is misplaced because in *Taylor* no challenge was made to the admission of the police report into evidence. The court noted in *Taylor* that a proper foundation was made for admission of the police report as past recollection recorded.

The defendant CTA urges that there are four prerequisites to the admission of a police report into evidence as past recollection recorded, namely, (1) the lack of any independent recollection of the witness regarding the occurrence, (2) failure of the report to refresh the recollection of the witness, (3) recording of the facts in the report at the time of the occurrence or soon thereafter, and (4) establishment of the truth and accuracy of the report when made. *Taylor v. City of Chicago* (1983), 114 Ill. App. 3d 715, 717, 449 N.E.2d 272.

The defendant CTA contends that plaintiff failed to establish these four prerequisites and failed to establish a proper foundation for the admission of Rossi's hospital case police report into evidence. Neither Officers Rossi nor Murray testified that the facts in the report were recorded by them at the time of the occurrence or soon thereafter and that plaintiff failed to question the officers regarding the date or time when the report was made.

The defendant CTA further contends that assuming Rossi's observation of the pothole at the accident scene and Lyle's statement to him of the cause of the occurrence as stated in his police report were admissible, the exclusion of this testimony by Rossi was harmless. The CTA urges that the testimony of the two passengers on the bus, Joan

Freeman and Shirley Maynie, and Lyle's physician, Dr. Kane, clearly established that there was a pothole in the street where Lyle got off of the bus, that Lyle stepped into the pothole and injured her leg, and that Lyle told Dr. Kane that as she was getting off of a CTA bus, she stepped into a pothole, and twisted her ankle. Thus, the defendants maintain the evidence in the police report which the trial court excluded was merely cumulative.

■■ The exclusion of evidence is harmless where the evidence excluded was fully established by other evidence and also where the evidence offered was merely cumulative. (*Kozasa v. Guardian Electric Manufacturing Co.* (1981), 99 Ill. App. 3d 669, 678, 425 N.E.2d 1146.) The statements set forth in Officer Rossi's hospital case report that Lyle told the officer that she exited a CTA bus at State and Randolph and stepped into a pothole and broke her ankle and there was a pothole at the scene, were established by the testimony of the bus passengers Freeman and Maynie and plaintiff's physician Dr. Kane. Officers Rossi's and Murray's similar testimony and the admission of their report into evidence would have been cumulative. We agree with the trial judge's ruling that the exclusion of the cumulative evidence was harmless error. We find no basis for reversing this ruling.

■■ Plaintiff next asserts that the trial court erred in refusing to give plaintiff's instruction 1A, that it is the law of the State of Illinois that upon the death of a party while his or her lawsuit is pending, the deceased's cause of action survives. Plaintiff tendered instruction No. 1A, which read as follows:

"The jury is instructed that Mildred Claire Lyle filed this lawsuit on July 15, 1978. On March 27, 1983, while this lawsuit was pending and undetermined, Mildred Claire Lyle died from causes unrelated to the injuries she allegedly received in the incident of June 14, 1978.

The law of the State of Illinois provides that upon death of a party while his or her lawsuit is pending, his or her original cause of action is carried on by the personal representative of Mildred Claire Lyle's estate.

On April 15, 1983, Thomas Chuhak was appointed administrator of the estate of Mildred Claire Lyle, also known as Claire Lyle, to administer her estate and to proceed with this lawsuit as party plaintiff in place and instead of Mildred Claire Lyle."

The defendants did not disagree with the instruction or object to it. The court at the instruction conference ruled that plaintiff's counsel could argue in closing argument the survival of the decedent's

cause of action and that plaintiff was entitled to recover damages from the date of the occurrence to the date of decedent's death. The court in the hearing on plaintiff's post-trial motion commented on its refusal to give the instruction.

> "During the voir dire, certain jurors were excused from serving as jurors in the case because they had expressed reservations about awarding money to a dead person. And throughout the voir dire, the jurors were questioned about that and they knew about it.
>
> I don't believe it was necessary to give them a written instruction on that. There is no IPI form as to that. But in view of the fact that it was already covered during the voir dire, all of the jurors were informed about it. It was not necessary."

Plaintiff concedes that there is no Illinois Pattern Jury Instruction (IPI) instruction on the subject, and plaintiff has not cited any case on the propriety of such an instruction. The defendant CTA argues that plaintiff's contention that the trial court's refusal to give the instruction was erroneous is meritless and that plaintiff's failure to cite authority constitutes a waiver of this issue on review.

The proffered jury instruction stated that Lyle's alleged cause of action survived her death. Instructions not included in the Illinois Pattern Jury Instructions may be tendered and properly given where the subject matter is not contained in the pattern instructions.

The plaintiff was not prejudiced by the trial court's refusal to give the instruction. During the *voir dire*, the jurors were informed of the fact that this cause involved a survival action. Jurors who expressed reservations regarding the award of money to a deceased person were excused. Further, the plaintiff was again allowed the opportunity to discuss without restriction a survival action with the jury during closing argument. The jury was adequately apprised of the nature of a survival action in this cause. Where no prejudice has been shown, the trial court's refusal to give an instruction cannot be deemed reversible error. *Skinner v. Baker* (1978), 67 Ill. App. 3d 773, 784, 384 N.E.2d 1360.

■ Plaintiff asserts that the trial court erred in refusing to instruct the jury on the inferences the jury could draw from the failure of the defendants to call certain witnesses they could have called but did not call. (Illinois Pattern Jury Instruction, Civil, No. 5.01 (2d ed. 1971)). On June 14, 1978 Chicago police officer Timothy Collins was assigned as a foot patrol officer to Loop parking and intersection control at State and Randolph during the third watch, which began at 4 p.m. The plaintiff maintains that Collins was in a unique position to

testify to important factors relating to plaintiff's lawsuit, namely, where the CTA bus stopped and the decedent alighted, how and where the plaintiff fell, and the physical condition of where the plaintiff fell. Plaintiff contends that the defendants did not interview Collins and learn whether he had any information concerning the occurrence of June 14, 1978, and that if he had information favorable to the defendants, he would have been a valuable witness, but he was not called to testify by the defendants.

During the conference on instructions the plaintiff tendered the following instruction:

"If a party to this case has failed to produce a witness within his power to produce, you may infer that the testimony of the witness would be adverse to that party if you believe each of the following elements:

1. The witness was under the control of the party and could have been produced by the exercise of reasonable diligence.

2. The witness was not equally available to an adverse party.

3. A reasonably prudent person under the same or similar circumstances would have produced the witness if he believed the testimony would be favorable to him.

4. No reasonable excuse for the failure has been shown."

The court first advised the plaintiff that "I am going to refuse this instruction but I will allow you to argue in your final argument." After plaintiff objected, the court modified the ruling to allow the instruction. The court ruled as follows:

"The Court: I am going to reverse myself. I am going to give it over objection. Now, as to the CTA—as to the City, I don't think it's applicable to the City. They explained that Collins left the police force."

The defendant CTA then asked the court how the instruction could be given so that the jury could differentiate between its application to the CTA and not the city. The court later ruled that the plaintiff could argue the principle in closing argument to the jury against the defendant CTA and the defendant city, only if the instruction was not given to the jury. Thereupon, plaintiff withdrew the instruction. Plaintiff argued the principle against both defendants in closing arguments to the jury.

Plaintiff argues that the defendants failed to call Officer Collins, or any of the more than 70 police officers assigned to the State and Randolph intersection foot beat from December 1977, to June 14, 1978, or the street and sanitation employees who would have seen the pothole at State and Randolph or maintenance and supervisory per-

sonnel of the CTA who would have been aware of the condition of the street where plaintiff fell. Plaintiff maintains that the instruction would have properly called to the jury's attention that defendant's failure to call any of these persons clearly inferred that if called they would have given evidence unfavorable to the defendants.

The defendant CTA argues that the trial court did not err in refusing the instruction. The decision whether to give this instruction was within the sound discretion of the trial court and is subject to reversal only where a clear abuse of discretion is shown. (*Hicks v. Hendricks* (1975), 33 Ill. App. 3d 486, 493, 342 N.E.2d 144.) The instruction is warranted when there is evidence that (1) the witness was under the control of a party and could have been produced by the party with the exercise of due diligence, (2) the witness was not available to the adverse party, (3) a reasonably prudent person under the same or similar circumstances would have produced the evidence or witness if he believed it would have been favorable to him, and (4) there was no reasonable excuse for the failure to produce the evidence or witness. (*Tuttle v. Fruehauf Division of Fruehauf Corp.* (1984), 122 Ill. App. 3d 835, 843, 462 N.E.2d 645.) Further, the instruction is not warranted when the unproduced witness' testimony would be merely cumulative of the facts already established. *Hicks v. Hendricks* (1975), 33 Ill. App. 3d 486, 493, 342 N.E.2d 144.

■ There was no abuse of discretion in the trial court's refusal to give the instruction. The defendant CTA advised the plaintiff of all the witnesses of whom it had knowledge. It was also established at trial that the police officer assigned to patrol the area in which the accident occurred, Officer Timothy Collins, was not employed by the Chicago police department at the time of the trial. The plaintiff failed to present any evidence to indicate that any other employee or agent employed by either defendant was present at the time of the occurrence or had any knowledge relevant to the plaintiff's case. The trial court recognized these facts when it initially refused the instruction. The plaintiff failed to demonstrate any reason that would warrant giving the instruction. Plaintiff failed to produce any evidence that Officer Collins witnessed the occurrence; his name was never listed as a witness to the occurrence. There was no showing that any witness who had relevant knowledge of the occurrence was within the defendant's power to produce at trial. Moreover, it appears that witnesses who were not called that are referred to by plaintiff in his brief were equally available and accessible to plaintiff. Moreover, their testimony would have been cumulative. The plaintiff called Joan Freeman and Shirley Maynie as witnesses to testify regarding the occurrence and

the condition of the area at which the incident occurred. The defendants called Richard Hunt, project manager for the construction company that worked in the area; Julius Brazil, an employee of the defendant CTA; and Chicago police officer Daniel Prunicki, who was at the scene of the accident approximately one hour prior to the occurrence, as witnesses. They testified to the conditions of the area where the incident occurred. The testimony of the witnesses to which plaintiff refers would have been merely cumulative. The failure to give the instruction was not error, and plaintiff's argument is without merit.

■ Plaintiff contends that it was reversible error for counsel for the city during final argument to read extensively from the trial testimony of witnesses Freeman and Maynie over plaintiff's objections.

The city maintains that a comparison of the testimony of witnesses Freeman and Maynie with counsel's closing argument shows that there was no verbatim reading of the transcript, that the questions and answers as paraphrased in the argument were not the identical verbatim testimony. The trial court, in denying plaintiff's post-trial motion stated that:

> "The Court saw that the Counsel for the City, Mr. Wright, did not have a transcript in his hand ***. ***So he had an opportunity to make extensive notes of all of the proceedings that had proceeded him, and I did not see any transcript, and he said those were from his notes."

A trial court has broad discretion in ruling on the scope and character of argument to the jury. (*Lounsbury v. Yorro* (1984), 124 Ill. App. 3d 745, 749, 464 N.E.2d 866.) Where, as in this case, it is not clear from the record what papers counsel held in his hand, the trial court was in a better position to determine whether counsel was reading from an improper document. We will not disturb the trial court's rulings on this issue.

■ Plaintiff argues that she is entitled to a new trial because of the prejudicial and inflammatory closing argument by counsel for the defendant CTA. Counsel for the CTA asserts that any improper remarks made by him were his responses to remarks in kind by plaintiff's counsel. The argument of plaintiff's counsel to the jury strongly intimated that counsel for the CTA did not live up to his oath as an attorney in answering interrogatories. Plaintiff's counsel further argued that counsel for the CTA violated his oath to tell the truth. He commented extensively on the failure of the CTA counsel to call certain witnesses and suggested that the CTA counsel may have lied and been unfair for not calling the witnesses. Plaintiff's counsel attempted

to persuade the jury by arguing that the CTA counsel was obligated "to keep those dollars to a minimum." He accused the CTA counsel of "covering up on this particular case," and he inferred that defense counsel had not lived up to his oath in his defense of this case.

Counsel for the CTA responded and now asserts that his argument must be considered in light of the argument of plaintiff's counsel. (*Whiteside v. Evers* (1973), 13 Ill. App. 3d 1089, 1090, 302 N.E.2d 254.) Counsel for the CTA argued that the plaintiff's counsel personally attacked him and accused him of being a thief, a crook, and of holding back something from the jury; that he had never been so accused in his 35 years as an attorney; that he represented the CTA on a *per diem* basis; that he would not get any more money whether he won or did not win the case; that he had no personal interest in the case; that the CTA only expected him to try his cases and wanted him to do an honorable job; that he wanted to win but he wanted to win honorably; that if he lost, he wanted to lose with honor; and that he was not trying to put anything over on the jury.

A lawyer is obligated to zealously represent a client, but within the bounds of the rules of law. A cursory review and compliance with these rules during the course of trial preparation and trial should prevent the kind of arguments about which complaint is here made. Supreme Court Rules 7—101(a)(1)(C), (D) (87 Ill. 2d Rules 7—101(a)(1)(C), (D)) provide:

"(a) A lawyer shall not intentionally

(1) fail to seek the lawful objectives of his client through reasonable available means permitted by law and the disciplinary rules, *** however, such "reasonably available means" do not include

* * *

(C) engaging in offensive tactics,

or

(D) failing to treat with courtesy and consideration all persons involved in the legal process."

Supreme Court Rules 7—106(c)(1), (3), (4), (6) (87 Ill. 2d Rules 7—106(c)(1), (3), (4), (6)) provide:

(c) In appearing in his professional capacity before a tribunal, a lawyer shall not

(1) state or allude to any matter that he has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence;

***

(3) assert his personal knowledge of the facts in issue, ex-

cept when testifying as a witness;

(4) assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, *** but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein;
***

(6) engage in undignified or discourteous conduct which is degrading to a tribunal ***."

Closing argument affords the attorney the opportunity to discuss and argue to the jury the evidence, or the lack of evidence, the inferences to be derived from the evidence, or lack of it, and the right to attempt to persuade the jury to decide the case favorably to the litigant on whose behalf the attorney argues. In the heat of a highly contested or emotional trial, an attorney's zeal on behalf of his client may understandably motivate him to occasionally transgress the bounds of propriety. Such instances should be infrequent, and when they occur the trial judge should promptly correct the impropriety by sustaining appropriately made objections, by emphatically admonishing offending counsel to cease and desist, and by an immediate curative instruction to the jury not to be influenced by and to disregard the improper argument. Closing argument should not be a diatribe or a tirade of insults and derogatory innuendoes and inferences against opposing counsel. Nor should an attorney inject his professional honor or integrity or his personal interest into his argument. Counsel should not indulge in such arguments, and the court should not tolerate them.

The previously mentioned portion of the argument by plaintiff's counsel was prejudicial. The argument was an unwarranted personal attack against the honor and integrity of counsel for the CTA. It was improper. It did not aid the jury in properly deciding the solemn task before it. The argument served to distract the jury from that duty and such an argument should not be a part of the trial affray.

Counsel for the CTA responded, and his previously mentioned response was likewise inappropriate. A counsel who is personally attacked and aggrieved by improper closing argument is not excused from objecting so that he may respond in kind. "Clearly two improper arguments—two apparent wrongs—do not make for a right result." (*United States v. Young* (1985), 470 U.S. 1, 11, 84 L. Ed. 2d 1, 9, 105 S. Ct. 1038, 1044.) The defamed attorney should object and request that offending counsel be directed to refrain from such an argument and that the jury be promptly given a curative instruction.

The trial judge should deal promptly with any breach by either

counsel. The trial judge has the responsibility to maintain decorum in keeping with the nature of the proceedings; he is the governor of the trial for the purpose of assuring the proper conduct. He must meet situations as they arise and cope with the contingencies inherent in the adversary process. *United States v. Young* (1985), 470 U.S. 1, 11, 84 L. Ed. 2d 1, 9, 105 S. Ct. 1038, 1044.

■ A trial court has wide discretion in ruling on the propriety of closing argument. (*Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 484, 473 N.E.2d 1322.) It was within the trial court's sound discretion to determine whether closing argument of counsel was inflammatory or prejudicial and denied plaintiff a fair trial. Absent a showing of abuse of discretion, the trial court's rulings on plaintiff's objections to the defense attorney's closing argument will not be disturbed. (*Reynolds v. Alton & Southern Ry. Co.* (1983), 115 Ill. App. 3d 88, 99, 450 N.E.2d 402.) Although we disapprove of both plaintiff and defense counsels' arguments, nevertheless, after a careful reading of the record we find that the argument made in closing by the CTA attorney, in the context of this case, did not deny plaintiff a fair trial.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SULLIVAN, P.J., and MURRAY, J. concur.