EARLINE DeBOW, Indiv. and as Special Adm'r of the Estate of Walter De-
Bow, an alleged Disabled Person, Plaintiff-Appellee, v. THE CITY OF
EAST ST. LOUIS *et al.*, Defendants-Appellants.

Fifth District No. 5—85—0532

Opinion filed July 10, 1987.

H. Gary Apoian, of East St. Louis, for appellants.

Clyde L. Kuehn and Eric M. Rhein, both of Kuehn & Rhein, of Belleville, for appellee.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

Plaintiff, Earline DeBow, individually and as special administrator of the estate of Walter DeBow, an alleged disabled adult, brought this civil rights action (42 U.S.C. sec. 1983 (1982)) against defendants, the city of East St. Louis (the city) and its police chief, Charles Wren, for injuries Walter DeBow sustained when he was attacked by another prisoner while incarcerated at the East St. Louis city jail. The circuit court of St. Clair County entered judgment on a jury verdict in favor of plaintiff in the amount of $3,400,000. Defendants appeal.

On January 24, 1984, Walter DeBow was arrested for illegal transportation of alcohol. He was placed in a cell in the East St. Louis jail without being given the opportunity to post his driver's license in lieu of bond as provided in Supreme Court Rule 526 (87 Ill. 2d R. 526). Defendants admitted that, at the time of his arrest, DeBow had a valid driver's license. On the same evening, off-duty police officer Evan Kyle stopped to investigate suspicious activity outside a gas station. Steven Griffin pointed a gun at Kyle and threatened him. Kyle left the gas station and phoned for assistance. Griffin was subsequently arrested for aggravated assault and unlawful use of a weapon. At the time of his arrest, Griffin was verbally abusive and threatening toward the officers at the East St. Louis jail. Griffin was placed in a cell by himself. The next morning, Griffin was removed from his cell by Sergeant Ezell for processing. Ezell testified that Griffin used threatening language while being moved upstairs for processing, but that he had calmed down by the time Ezell had completed the processing. Although another vacant cell was available, Ezell placed Griffin in the same cell with DeBow at approximately 9 a.m. Patrolman Lionel Settles testified that he fed the prisoners at 9:10 a.m. and that DeBow and Griffin did not appear to be having any problems at that time. At approximately 10:30 a.m., Sergeant Vlahek found DeBow unconscious on the floor of the cell with a severe head injury. Griffin's steel-toed work boots were found in the cell with blood on the toe of one of the boots.

Plaintiff filed an amended two-count complaint alleging, *inter alia*, that defendants, acting under color of State law, deprived DeBow of his due process rights under the fourth and fourteenth amendments to the United States Constitution in that they unlawfully confined DeBow in an unsafe jail cell, failed to comply with minimum jail

standards, ignored warnings by the Illinois Department of Corrections (DOC) that pretrial detainees were being inadequately supervised, failed to monitor the conduct of detainees and failed to segregate violent detainees from other detainees. Count I alleged that defendants were negligent. Count II alleged that defendants acted recklessly.

The East St. Louis city jail is a short-term detention facility. The cell where DeBow was injured was on the second floor of the jail. Defendant Wren testified that a desk sergeant and a patrolman were on duty at all times. According to Wren, both of these individuals were responsible for supervising detainees. However, this information was never communicated to the individuals on duty as their testimony reveals that no one understood it to be their official duty to check routinely the detainees. Frequently, the patrolman on duty was called away from the jail to perform other tasks in the community. Plaintiff established that defendants had received numerous notices of noncompliance with minimum jail safety standards. In particular, defendants had been warned that detainees were being inadequately supervised. Conditions in the jail remained unchanged since 1979. Detention consultant Ronnie Wells of the DOC had recommended that the jail be closed. Plaintiff introduced evidence that DeBow suffered permanent brain damage from the injury and was unable to care for himself or perform simple tasks.

Defendants raise the following eight issues on appeal: (1) whether the trial court erred in failing to hold an instruction conference prior to instructing the jury; (2) whether the jury instructions are erroneous; (3) whether the trial court erred in striking for cause all prospective jurors who were East St. Louis residents; (4) whether the trial court erred in denying defendants' motion to continue; (5) whether the verdict is against the manifest weight of the evidence; (6) whether the trial court erred in denying defendants' motion for change of venue; (7) whether the trial court erred in admitting evidence of defendants' conduct prior to and after January 25, 1984; and (8) whether the trial court erred in granting plaintiff's motion *in limine* precluding defendants from introducing evidence of DeBow's bad character.

Defendants' first contention is that the trial court committed reversible error by failing to hold an instruction conference prior to giving the instructions to the jury. The record reveals that at the close of all the evidence and prior to closing arguments, the trial court held an informal discussion on jury instructions with counsel. No record was made of this discussion. The next day, the court made the following comment while in chambers with counsel:

"THE COURT: I told both parties they'd be allowed to make a record regarding those jury instructions this morning before we argue the case to the jury."

Defense counsel tendered two instructions, a discussion was held off the record and, subsequently, defense counsel stated:

"MR. APOIAN: The court has just informed counsel that he wishes for us to give closing arguments to the jury and to tender jury instructions to them prior to the making of a record with regard to objections to the instructions of the plaintiff which the defendant does, in fact, have. *** [T]here may be points that might be raised prior to the jury being instructed that would necessitate either withdrawal of an instruction by the plaintiff or some type of modification ***. I think that possible prejudice could result and I just want the record to be clear that we're objecting to that procedure *** being followed.

* * *

THE COURT: *** As [is] the court's practice, because this is a case involving a lot of non-IPI instructions, both parties know what instructions are going to be given, and each party is going to be afforded the opportunity to object to the instructions *** to complete the record, because we're out of time on this matter, and *** that if it's error on these instructions it will be taken up by the appellate court."

While the jury was deliberating, the parties were given the opportunity to make a record of their objections to the jury instructions.

Section 2—1107(c) of the Code of Civil Procedure provides that "[t]he court shall hold a conference with counsel to settle the instructions and shall inform counsel of the court's proposed action thereon prior to the arguments to the jury." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1107(c).) Defendants maintain that the trial court failed to follow this procedure and abused its discretion by conducting the conference during deliberations. Plaintiff asserts that the statute does not require that the conference be held on the record and that defendants failed to raise a timely objection. Our reading of the record leads us to conclude that defendants objected to the procedure followed by the trial court as soon as counsel was informed that a formal conference was not going to be held on the record until jury deliberation.

The purpose of the instruction conference is to give counsel an opportunity to object to or correct erroneous instructions. (*Stephenson v. Dreis & Krump Manufacturing Co.* (1981), 101 Ill. App. 3d 380, 387, 428 N.E.2d 190, 195.) The conference may be held at any time during the trial within the reasonable discretion of the trial court, provided

counsel are informed of the court's action on tendered instructions prior to closing arguments. (*Ondersin v. Elgin, Joliet & Eastern Ry. Co.* (1959), 20 Ill. App. 2d 73, 77, 155 N.E.2d 338, 341.) The comments of the trial court and counsel lead us to conclude that an instruction conference was held prior to closing arguments. Although we have no way of knowing the extent or scope of the conference, we do not believe that the failure to make a formal record of the conference deprived defendants of a fair trial (*Hammer v. Slive* (1960), 27 Ill. App. 2d 196, 204, 169 N.E.2d 400, 404) where they were subsequently allowed to make a record of their objections so as to preserve them for review (*American National Bank v. Wisniewski* (1974), 18 Ill. App. 3d 961, 970, 310 N.E.2d 834, 841).

 █ The second issue is whether the jury was properly instructed regarding the state of mind required to constitute a deprivation of liberty. The parties agree on appeal that the applicable standard is that of recklessness. However, defendants contend that the instructions failed to inform the jury that it must find that defendants acted in reckless disregard of DeBow's right to be free from attack in order to impose liability. Defendants maintain that the instructions allowed the jury to base liability upon the lesser standard of negligence. The following instruction, derived from *Matzker v. Herr* (7th Cir. 1984), 748 F.2d 1142, 1149, was given on the standard of recklessness:

> "Pretrial detainees have rights under the due process clause of the fourteenth amendment to the Federal Constitution to receive reasonable protection from harm inflicted by other inmates. Reckless disregard of a detainee's right to be free from attacks by other detainees may be shown by the existence of a pervasive risk of harm to detainees by other detainees and a failure by jail officials to respond reasonable to that risk. A pretrial detainee who proves, by a preponderance of the evidence, that a party to this lawsuit knew or should have known of the need for protective measures for those in custody, but failed to institute such protective measures, to his damage, has proven a violation of his due process rights."

Defendants assert that although this instruction is accurate, several other instructions are misleading and incorrectly state the standard of care.

Instruction No. 22, derived from *Parratt v. Taylor* (1981), 451 U.S. 527, 68 L. Ed. 2d 420, 101 S. Ct. 1908, provides that "[i]t is not necessary to find that a defendant had any specific intent to deprive Walter DeBow of his civil rights in order to find in favor of plaintiff.

Plaintiff is entitled to recover if the defendants *** acted or failed to act in a manner which resulted in a violation of Walter DeBow's civil rights, as explained in these instructions." In *Parratt*, the Supreme Court addressed the question of whether mere negligence will support a claim for relief under section 1983. (451 U.S. 527, 534, 68 L. Ed. 2d 420, 427-28, 101 S. Ct. 1908, 1912.) The court concluded that section 1983 contained "no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right." (*Daniels v. Williams* (1986), 474 U.S. 327, 330, 88 L. Ed. 2d 662, 667, 106 S. Ct. 662, 664, citing *Parratt v. Taylor* (1981), 451 U.S. 527, 534, 68 L. Ed. 2d 420, 427-28, 101 S. Ct. 1908, 1912.) Although the court determined that the negligent loss of an inmate's personal property by State officials amounted to a deprivation, it rejected the inmate's claim because the State tort remedy provided a procedure that satisfied due process. (451 U.S. 527, 536-44, 68 L. Ed. 2d 420, 429-34, 101 S. Ct. 1908, 1913-17.) Because the court failed to specify when this holding should apply, *Parratt* only spawned more confusion as to the state of mind required to impose liability under section 1983. (See *The Supreme Court 1985 Term*, 100 Harv. L. Rev. 144 (1986).) At the time of the instant trial *Daniels v. Williams* (1986), 474 U.S. 327, 88 L. Ed. 2d 662, 106 S. Ct. 662 had not been decided. In *Daniels*, the court overruled "*Parratt* to the extent that it states that mere lack of due care by a state official may 'deprive' an individual of life, liberty or property under the Fourteenth Amendment." (474 U.S. 327, 330-31, 88 L. Ed. 2d 662, 668, 106 S. Ct. 662, 665.) The court adhered to the conclusion in *Parratt* that section 1983 contains no state-of-mind requirement, but clarified that in any given civil rights action, "plaintiff must still prove a violation of the underlying constitutional right; and depending on the right merely negligent conduct may not be enough to state a claim." 474 U.S. 327, 330, 88 L. Ed. 2d 662, 667, 106 S. Ct. 662, 664.

Instruction No. 22, providing that defendants need not have a "specific intent" to deprive DeBow of his civil rights, adheres to that portion of *Parratt* which was upheld in *Daniels*. (See *Daniels v. Williams* (1986), 474 U.S. 327, 330, 88 L. Ed. 2d 662, 667, 106 S. Ct. 662, 664.) We disagree with defendants' interpretation of the instruction as incorrectly informing the jury that mere negligence on the part of defendants is sufficient to constitute a deprivation of liberty. We note that plaintiff does not attempt to argue on appeal that, based upon *Parratt*, the jury should have been instructed that negligence is sufficient to constitute a deprivation of liberty. Defendants also find fault with certain instructions because they include the terms "actions

or omissions." Both deliberate acts and the failure to act may constitute reckless disregard of another's safety. (Restatement (Second) of Torts sec. 500, comment *a* (1965).) Therefore, we find no error in the use of these terms.

■■ Defendants contend that the jury instructions are erroneous because they fail to direct the jury's attention to defendants' conduct on January 25, 1984. In particular, defendants find fault with instruction No. 24, which quotes sections of the Illinois Department of Corrections Municipal Jail and Lockup Standards. The instruction provides that "if you decide that a party violated the standards *on the occasion in question*, then you may consider that fact together with all other facts *** in determining whether or not the parties violated *** DeBow's civil rights *at the time of the occurrence*." Contrary to defendants' assertion, this instruction was sufficient to direct the jury's attention to the time DeBow was injured.

■■ ■ Defendants' final argument regarding the jury instructions is that the trial court erred in instructing the jury that an adverse inference may be drawn from a party's failure, without reasonable excuse, to produce evidence within its control and not equally available to the other party. (Illinois Pattern Jury Instructions, Civil, No. 5.01 (2d ed. 1971).) Plaintiff maintains that the instruction was warranted by defendant's failure to produce certain photographs taken by Sergeant Ezell of DeBow at the time he was injured and by defendants' failure to produce jail inspection log reports for January 25, 1984. The decision to give this instruction is left to the sound discretion of the trial court and will be reversed only when a clear abuse of discretion appears of record. (*Tuttle v. Fruehauf Corp.* (1984), 122 Ill. App. 3d 835, 843, 462 N.E.2d 645, 652.) Foundation evidence was presented which suggested that: (1) both the photographs and inspection logs were under the control of East St. Louis police department; (2) the evidence was not equally available to plaintiff; (3) a reasonably prudent person under similar circumstances would have produced the evidence if he believed it would have been favorable to him; and (4) defendants' excuse for failing to produce the evidence was not reasonable. (*Tuttle v. Fruehauf Corp.* (1984), 122 Ill. App. 3d 835, 843, 462 N.E.2d 645, 652.) Additionally, it does not appear from the record that this evidence would merely be cumulative to the facts already established. (*Hicks v. Hendricks* (1975), 33 Ill. App. 3d 486, 493, 342 N.E.2d 144, 150.) Therefore, we find no abuse of discretion.

■■ The third issue is whether the trial court erred in striking for cause all prospective jurors who were residents of East St. Louis. The venire contained six prospective jurors who were East St. Louis resi-

dents. The trial court dismissed five of those jurors on the basis that "since they are [taxpayers] they could be ultimately responsible for a judgment, if any is rendered in this case." The jury was selected before reaching the final prospective juror who was an East St. Louis resident. Although defendants state that the trial court's actions denied them a "fair cross-section of the community," defendants rely upon section 1—6—1 of the Illinois Municipal Code, which provides that "no person shall be incompetent to serve as *** juror by reason of his or her being an inhabitant *** in a municipality, in any action or proceeding in which that municipality may be a party in interest" (Ill. Rev. Stat. 1985, ch. 24, par. 1—6—1), rather than advancing an argument based upon the sixth amendment to the United States Constitution.

Plaintiff maintains that defendants have waived this allegation of error by not objecting to the trial court's actions with the required specificity. The record shows that the trial court recognized a "continuing objection by [defense counsel] that he feels that just because a juror lives in East St. Louis he should not be excused for cause." Although counsel did not specifically cite section 1—6—1 of the Code to the court, the objection was sufficient to apprise the trial court that defendants disagreed with the trial court's basis for dismissing the jurors for cause and therefore defendants may rely upon the statute on appeal.

▉▉ Although it has been suggested that the question of whether a potential juror's interest as a taxpayer might impair his ability to act impartially can be resolved during *voir dire* examination (*Corbetta Construction Co. v. Lake County Public Building Com.* (1978), 64 Ill. App. 3d 313, 330, 381 N.E.2d 758, 770-71), we have found no prior decisions on the issue of whether or not the trial court's actions constitute reversible error. Throughout the trial, defendants claimed that the city's poor financial status prevented defendants from improving the safety conditions in the jail. Under these circumstances, the interest of a potential juror as a taxpayer in East St. Louis is not too minute or so remote to lead us to conclude that the trial court's action in dismissing all potential East St. Louis residents as jurors requires reversal of the judgment entered below. Moreover, there is nothing in the record to suggest that those jurors who did serve were incompetent or biased against defendants. We would further observe that section 1—6—1 of the Municipal Code appears to be only a general qualification statute which has no bearing on a juror's suitability to sit in any particular cause.

▉▉ ▉ The fourth issue is whether the trial court erred in deny-

ing defendants' motion for continuance. The motion was made the day the trial was to begin. Defendants contend that their motion should have been granted because they were confronted with plaintiff's second amended complaint only three days prior to trial and that, because plaintiff's complaint dismissed Steven Griffin as a third-party defendant, defendants should have been given time to file a third-party complaint against Griffin. Defendants also contend that their motion should have been granted because of their inability to depose Steven Griffin. Once a cause has been reached for trial, Supreme Court Rule 231(f) provides that no motion for a continuance shall be heard unless a sufficient excuse is shown for the delay. (87 Ill. 2d R. 231(f); *Marshall v. Henning* (1980), 91 Ill. App. 3d 180, 182, 414 N.E.2d 529, 531.) The trial court has broad discretion in granting or denying a motion for continuance and its decision will not be reversed on appeal absent an abuse of that discretion. (*Marshall v. Henning* (1980), 91 Ill. App. 3d 180, 182, 414 N.E.2d 529, 531.) Plaintiff's amended complaint merely separated plaintiff's claims of negligent and reckless conduct into separate counts and did not present defendant with any surprises or new issues. Furthermore, defendants' third-party action against Steven Griffin was severed from the instant cause. Therefore, the trial court's failure to grant a continuance on this basis does not constitute an abuse of discretion.

▪ ■ ■ Defendants also contend that their motion should have been granted because of their inability to depose Griffin. Criminal charges had been filed against Griffin as a result of the injuries suffered by DeBow. Griffin did not testify at his trial and was convicted of aggravated battery. Although Griffin was granted limited immunity with regard to the instant cause, he was advised not to testify and defendants were unable to depose Griffin. Defendants maintain that Griffin's testimony was relevant because he would testify that, on the day DeBow was injured, the cell area was inspected frequently, that he engaged in conversation with police officers in a calm manner and that DeBow was the aggressor. Absent a showing of prejudice, the denial of a motion for continuance is not a basis for reversal. (*Midwest Home Savings & Loan Association v. Ridgewood* (1984), 123 Ill. App. 3d 1001, 1005, 463 N.E.2d 909, 912.) Even if defendants had been able to depose Griffin and Griffin had testified as defendants expected him to, such testimony would merely have been cumulative to that given by other witnesses. Sergeant Ezell testified that he had viewed the detainees on a half-hour basis on the day in question and that Griffin appeared calm. Detectives Blaha and O'Connor testified, without objection, that Griffin stated that he had been attacked by De-

Bow. Furthermore, defendants did not introduce any evidence showing that Griffin has suffered any injury from DeBow and Detective O'Connor testified that when he saw Griffin in the afternoon on January 25, 1984, he did not observe any injuries. In light of the evidence of blood on the toe of Griffin's steel-toed boot, the effect of any testimony from Griffin that DeBow was the aggressor is speculative at best. We conclude that defendants have failed to establish that they were prejudiced by the trial court's denial of their motion for continuance.

■■ The fifth issue is whether the evidence was sufficient to support a finding of recklessness. As noted above, the Supreme Court has held that negligent conduct does not implicate the due process clause of the fourteenth amendment. (*Daniels v. Williams* (1986), 474 U.S. 327, 333-34, 88 L. Ed. 2d 662, 670, 106 S. Ct. 662, 666.) Defendants rely upon the companion case of *Davidson v. Cannon* (1986), 474 U.S. 344, 88 L. Ed. 2d 677, 106 S. Ct. 668, to support their contention that their conduct cannot be deemed reckless. Defendants maintain that their conduct was less egregious than the respondents' conduct in *Davidson* and that, given the court's determination in *Davidson* that respondents' conduct was merely negligent, defendants' conduct cannot constitute recklessness. In *Davidson v. Cannon* (1986), 474 U.S. 344, 345, 88 L. Ed. 2d 677, 681, 106 S. Ct. 668, 669, petitioner Davidson brought a civil rights action against prison officials seeking damages for injuries he suffered when they negligently failed to protect him from another inmate. Davidson had been threatened by the other inmate, McMillan, and reported the threat to Officer Garcia. (474 U.S. 344, 350-51, 88 L. Ed. 2d 677, 684, 106 S. Ct. 668, 673 (Blackmun, J., dissenting).) Davidson's note found its way to respondents Cannon and James, neither of whom instituted any measures to protect Davidson. (474 U.S. 344, 345-46, 88 L. Ed. 2d 677, 681, 106 S. Ct. 668, 669.) Approximately two days after the initial threat, McMillan attacked and injured Davidson. (474 U.S. 344, 346, 88 L. Ed. 2d 677, 681, 106 S. Ct. 668, 669.) Finding *Daniels* controlling, the court concluded that respondents' negligence "[did] not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent." 474 U.S. 344, 347-48, 88 L. Ed. 2d 677, 682, 106 S. Ct. 668, 670.

We note that, in both *Daniels* and *Davidson*, petitioners claimed only that respondents' conduct was negligent. (*Daniels v. Williams* (1986), 474 U.S. 327, 328, 88 L. Ed. 2d 662, 666, 106 S. Ct. 662, 663; *Davidson v. Cannon* (1986), 474 U.S. 344, 347, 88 L. Ed. 2d 677, 682, 106 S. Ct. 668, 670.) Therefore, the question of whether "something

less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause," was not addressed. (See *Daniels v. Williams* (1986), 474 U.S. 327, 334 n.3, 88 L. Ed. 2d 662, 670 n.3, 106 S. Ct. 662, 667 n.3.) However, two justices agreed with Justice Blackmun's dissent in which he stated that the record strongly suggested that respondents' failure to protect Davidson from attack was reckless and not merely negligent. (See *Davidson v. Cannon* (1986), 474 U.S. 344, 356-58, 88 L. Ed. 2d 677, 688-89, 106 S. Ct. 668, 674-75 (Blackmun, J., dissenting).) In failing to remand, as suggested by the dissents, the majority adhered to petitioner's contention that respondents' conduct was negligent.

Defendants argue that, if respondents' conduct in *Davidson* is only negligent even though there was actual notice that McMillan posed a danger to Davidson, their conduct cannot be deemed reckless where there was no actual notice that Griffin endangered DeBow's safety. *Davidson* is distinguishable from the instant cause on the basis of the identity of the defendants. Here, plaintiff has filed suit against the chief of police and the city of East St. Louis, whereas in *Davidson* petitioner filed suit against the prison officials who had received actual notice of McMillan's threat. Clearly, defendants here were not in a position to assess the degree of harm posed to DeBow by Griffin. We agree with defendants' argument to the extent that it applies to the officers on duty at the jail the day DeBow and Griffin were arrested. Their conduct appears to have been less egregious than that of the respondents in *Davidson*. However, plaintiff asserts that it is defendants' failure to maintain a safe jail after receiving notice of their noncompliance with minimum safety standards and the potential danger posed by the inadequate supervision of detainees which renders them liable under section 1983. Plaintiff maintains that there is ample evidence from which to conclude that defendants' conduct evinces a reckless disregard to DeBow's right to be free from attack.

Plaintiff introduced evidence of defendants' continued noncompliance with minimum jail safety standards. Of particular concern was the failure to supervise adequately the detainees. Hourly visual checks of the detainees were not being conducted and testimony at trial reveals that no one understood it to be their official duty to conduct such routine checks. Ronnie Wells, a detention consultant employed by the DOC, testified that he had been informed that it was the desk sergeant's duty to supervise the detainees. Defendant Wren's testimony was in agreement. Wells testified, however, that the desk sergeant was located downstairs, but the cell block area was on the second

floor, rendering adequate supervision next to impossible. Additionally, the other officer on duty was frequently called away from the jail. Testimony reveals that neither the desk sergeant nor the other officer on duty understood it to be their official duty to check routinely the detainees. Wells had suggested that an officer be placed on the second floor. According to Wells, conditions in the jail had remained unchanged from 1979 through 1984. The jury was allowed to view the jail. Sergeant Ezell testified that although it was not his official duty to supervise the detainees, he viewed them on a half-hour basis on the day in question. However, defendants were unable to produce inspection logs for January 25, 1984, although Wells testified that they "usually came up with some" in the past. In addition to problems with inadequate supervision, Wren testified that it was customary to place detainees in the same cell even when vacant cells were available. It also appears from the record that "unusual incident reports" informing the DOC of serious injuries incurred by detainees were not submitted in accordance with DOC regulations. In summary, defendants had received notice over a period of years that conditions in the jail were deplorable and that the failure to supervise adequately detainees posed a danger to their safety. The only evidence introduced by plaintiff of actual injuries suffered by detainees was the injury to DeBow, a suicide that occurred three months after the instant injury and a third injury to an unknown detainee on an unknown date.

■■■ We address first the evidence as it pertains to defendant Wren. We note that plaintiff does not argue that Wren should be held liable under section 1983 for the actions of his police officers. (See, *e.g., Black v. Stephens* (3d Cir. 1981), 662 F.2d 181, 189.) In light of our conclusion above that, based upon *Davidson*, the officers' conduct can only be deemed negligent, such an argument would fail. Instead, Wren's liability must be founded upon his own reckless conduct in failing to respond to the repeated warnings of the DOC and enforce adequate protection procedures. (See. *e.g., Martin v. White* (8th Cir. 1984), 742 F.2d 469, 475-76.) In *Matzker v. Herr* (7th Cir. 1984), 748 F.2d 1142, 1145, plaintiff brought a section 1983 action against the sheriff of St. Clair County for injuries sustained in the county jail from an attack by another pretrial detainee. The court stated that a supervisory official's reckless disregard of an inmate's right to be free from attacks by other inmates may be shown by the existence of a pervasive risk of harm to inmates from other inmates and a failure by the official to respond reasonably to that risk. (748 F.2d 1142, 1149.) A pervasive risk of harm may be established by proving that violence occurs with sufficient frequency that inmates are put in fear for their

safety so that officials in charge of the jail are reasonably apprised of the existence of a problem and the need for protective measures. 748 F.2d 1142, 1149.

Plaintiff failed to establish that violence was commonplace at the East St. Louis city jail. She did establish that Wren had received numerous oral and written notices that detainees were being inadequately supervised and that the lack of supervision posed a threat to safety. Although a pervasive risk of harm was not established in the precise manner suggested by the court in *Matzker v. Herr* (7th Cir. 1984), 748 F.2d 1142, 1149, we do not believe that the existence of such a risk could be denied where plaintiff has established that officials were repeatedly put on notice that the lack of supervision would result in a detainee suffering injury from an attack by another detainee. From this evidence, the jury could reasonably conclude that Wren was apprised of the problem and the need for protective measures.

Once it was established that a pervasive risk of harm existed, it must be determined whether Wren responded reasonably to that risk. In spite of the repeated warnings that the jail was being operated in an unsafe manner, Wren took no steps to alleviate the risk of danger. Wren admitted that the DOC reports of noncompliance were accurate, but claimed that improvements could not be made because of insufficient funds. Financial plight is not an excuse for housing detainees in the same cell when vacant cells are available, for stationing officers where they could provide little protection to detainees, for failing to communicate to the desk sergeant that it is his responsibility to supervise the detainees, for failing to enforce the DOC standards of hourly routine checks, for failing to report unusual incidents to the DOC or for failing to be informed on the detainee's privilege to post a driver's license in lieu of bail for minor traffic offenses (87 Ill. 2d R. 526). There is no evidence that Wren took any action to alleviate the risk of harm. Based upon these facts, the jury could reasonably conclude that Wren did not respond reasonably to the risk. There was ample evidence from which the jury could have concluded that the jail was administered in a manner virtually indifferent to the safety of detainees and that Wren's conduct in failing to institute and enforce protective measures was a proximate cause of DeBow's injuries.

With regard to the city, a municipality may be sued directly under section 1983 for constitutional deprivations inflicted upon individuals pursuant to government policy or custom where a sufficient causal link exists between the policy or custom and the depriva-

tion. (*Monell v. Department of Social Services* (1978), 436 U.S. 658, 690-95, 56 L. Ed. 2d 611, 635-38, 98 S. Ct. 2018, 2035-38. "[I]t is when the execution of a government's policy or custom, whether made by its lawmakers or those whose *** acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under section 1983." (*Monell v. Department of Social Services* (1978), 436 U.S. 658, 694, 56 L. Ed. 2d 611, 637-38, 98 S. Ct. 2018, 2037.) In accordance with *Daniels v. Williams* (1986), 474 U.S. 327, 88 L. Ed. 2d 662, 106 S. Ct. 662, plaintiff must establish fault beyond mere negligence on the part of the city in establishing the policy or custom. (See also *Jones v. City of Chicago* (7th Cir. 1986), 787 F.2d 200, 203.) The city does not contend that plaintiff failed to establish the *Monell* requirements, but argues only that its conduct does not rise to the level of recklessness. The custom involved here is, in essence, one of inaction as evinced by the city's failure to respond to the repeated notices of noncompliance with minimum jail safety standards and to implement procedures assuring the adequate supervision of detainees. "A plaintiff that faults a municipality's inaction must show that there is an 'extremely high degree' of municipal culpability." (*Jones v. City of Chicago* (7th Cir. 1986), 787 F.2d 200, 205.) "No municipality may be held liable for its indifference to the mere *possibility* of a constitutional deprivation. Rather the plaintiff must show the municipality was aware either of actual deprivations or of such a strong likelihood of imminent (though unrealized) deprivations that any reasonable person would have taken preventive measures." (*Jones v. City of Chicago* (7th Cir. 1986), 787 F.2d 200, 205.) There is ample evidence in the record to support the conclusion that the city was aware of the strong likelihood that, absent preventative measures, a detainee would sustain serious injury from attack by another detainee as a result of the deliberate indifference shown to safety. As noted in *Jones*, plaintiff's inability to show that the city was aware of actual injuries incurred by attack from other detainees does not defeat her claim where she establishes a strong likelihood of imminent, though unrealized, deprivations. (787 F.2d 200, 205.) The city's chief of police, mayor and city clerk had received warnings from the DOC since 1979 that the manner in which its jail was constructed and operated posed a danger to safety. Such continued inaction evinces more than an indifference to the mere possibility of a constitutional deprivation. We conclude that there is a sufficient basis for the jury's finding of the city's liability under section 1983.

The sixth issue is whether the trial court abused its discretion in denying defendants' motion for change of venue for cause.

Defendants' initial petition for change of venue alleging prejudice of the trial judge was granted as a matter of right. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1001(a)(2); *In re Marriage of Kozloff* (1984), 101 Ill. 2d 526, 530, 463 N.E.2d 719, 721.) Defendants' second petition for change of venue alleging prejudice of the trial judge subsequently assigned to this cause must contain specific allegations to support the charges of prejudice. (*Rosewood Corp. v. Transamerica Insurance Co.* (1974), 57 Ill. 2d 247, 254, 311 N.E.2d 673, 677.) Defendants' petition for change of venue for cause contains only general allegations of prejudice and, therefore, the trial court did not abuse its discretion in denying the petition. (*Rosewood Corp. v. Transamerica Insurance Co.* (1974), 57 Ill. 2d 247, 254, 311 N.E.2d 673, 677.) Furthermore, we find nothing in the record which supports defendants' claim of prejudice.

▆▆▆▆ The seventh issue is whether the trial court erred in admitting evidence of the defendants' actions or omissions prior to and after the date DeBow was injured. Evidence of defendants' conduct prior to January 25, 1984, establishes that defendants had received notice that they were inadequately supervising detainees and was, therefore, relevant to the state of mind required to establish liability under section 1983. Additionally, preoccurrence events were admissible to prove that the City had implemented a policy or custom which deprived DeBow of his right to liberty. (See *Monell v. Department of Social Services* (1978), 436 U.S. 658, 690-95, 56 L. Ed. 2d 611, 635-38, 98 S. Ct. 2018, 2035-38.) Defendants also contend that the trial court erred in admitting evidence of a suicide which occurred in the jail after DeBow was injured and evidence of continued noncompliance with DOC minimum safety standards after the date in question. Generally, error in the admission of evidence does not require reversal if there has been no prejudice or if the evidence has not materially affected the outcome of the trial. (*Bullard v. Barnes* (1983), 112 Ill. App. 3d 384, 392, 445 N.E.2d 485, 491, *aff'd* (1980), 102 Ill. 2d 505, 468 N.E.2d 1228.) The trial court admitted evidence of defendants' noncompliance with DOC standards beginning in 1979. The jury was given ample evidence from which it could conclude that defendants had received notice of the safety hazard which existed in the jail and we do not believe that evidence of defendants' noncompliance for the year following DeBow's injury affected the outcome of the trial. Similarly, we cannot say that the admission of evidence of a suicide occurring after the instant injury resulted in a denial of real justice. (*Bradfield v. Illinois Central Gulf R.R. Co.* (1985), 137 Ill. App. 3d 19, 23, 484 N.E.2d 365, 368.) Testimony regarding the suicide was not em-

phasized. (See *Bullard v. Barnes* (1983), 112 Ill. App. 3d 384, 392, 445 N.E.2d 485, 491-92, *aff'd* (1984), 102 Ill. 2d 505, 468 N.E.2d 1228.) "The objective of a reviewing court is not to determine whether the record is totally free of error but whether any error occurred that substantially prejudiced a party and affected the outcome below." (*Bradfield v. Illinois Central Gulf R.R. Co.* (1985), 137 Ill. App. 3d 19, 23, 484 N.E.2d 365, 368.) We find that no substantial prejudice occurred from the admission of acts or omissions occurring after January 25, 1984.

■ The final issue is whether the trial court erred in precluding defendants from introducing evidence of DeBow's bad character. Defendants contend that although character evidence is generally not admissible in civil proceedings, such evidence was relevant here because plaintiff sought future damages. Defendants sought to introduce the testimony of several police officers who would testify that DeBow drank to excess and was prone to "getting into trouble." According to defendants, such testimony would be relevant to future earnings. Defendants had not revealed the existence of these potential witnesses in pretrial discovery. The trial court ruled that the evidence was irrelevant and not probative of the facts in issue. Furthermore, the court ruled that the witnesses were discoverable by defendants and that the attempt to submit additional witnesses came too late.

The admission of evidence is a matter largely within the discretion of the trial judge and reversal is not warranted in the absence of an abuse of that discretion. (*Bullard v. Barnes* (1983), 112 Ill. App. 3d 384, 392, 445 N.E.2d 485,491, *aff'd* (1984), 102 Ill. 2d 505, 468 N.E.2d 1228.) Defendants introduced the testimony of DeBow's employer which established his record of absenteeism from work. We do not believe that the trial court abused its discretion in ruling that the prejudicial effect of the proffered testimony outweighed its probative value, particularly where the identity of the witnesses had not been disclosed to plaintiff during discovery.

For the reasons given, the judgment of the circuit court of St. Clair County is affirmed in all respects.

Affirmed.

HARRISON and WELCH, JJ., concur.