NOTICE
Decision filed 02/04/22. The text of this decision may be changed or corrected prior to the filing of a Petiion for Rehearing or the disposition of the same.

2022 IL App (5th) 210058-U

NO. 5-21-0058

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| HAMANN & BORGMEYER, INC., MATTHEW L. HAMANN, and ETHAN J. BORGMEYER, | ) ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 18-SC-2633 |
| THE CITY OF COLLINSVILLE, | ) ) | Honorable Clarence W. Harrison II, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Moore and Wharton concurred in the judgment.

**ORDER**

¶ 1   *Held*:  It was properly within the circuit court's discretion to consider and treat the defendant's motion for directed verdict as the defendant's closing argument at trial, and the circuit court's judgment denying the plaintiffs' claim was not contrary to the manifest weight of the evidence.

¶ 2   The plaintiffs, Hamann & Borgmeyer, Inc., Matthew L. Hamann, and Ethan J. Borgmeyer, filed a small claims complaint in the circuit court of Madison County alleging a violation of 42 U.S.C. § 1983 against the defendant, the City of Collinsville. The plaintiffs alleged that pursuant to 42 U.S.C. § 1983, their fifth amendment (U.S. Const., amend. V) rights were violated when City of Collinsville police officers damaged a door

1

at an apartment complex owned by the plaintiffs, thus committing a taking of private property without payment of just compensation. On the day of the bench trial, counsel for the defendant filed a motion for directed verdict. At the close of the evidence, counsel for the defendant informed the circuit court of the motion. After some discussion by the circuit court and counsel regarding the motion, the court indicated that it would be treating the motion as the defendant's closing argument at trial, granted the plaintiffs time to respond, "in closing," took the matter under advisement, and ultimately, entered judgment in favor of the defendant. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 3                                I. BACKGROUND

¶ 4    On August 15, 2018, the plaintiffs filed a three-count complaint in the circuit court of Madison County against the defendant alleging a violation of 42 U.S.C. § 1983. The complaint stated that on March 9, 2017, officers employed by the Collinsville Police Department were conducting an investigation on property owned by the plaintiffs. The police officers were searching for a wanted suspect. According to the complaint, during this investigation, the police officers used force to gain access to the door leading to the basement area of the property, thereby causing damage to the door, constituting a taking of property by a governmental agency, the City of Collinsville, in violation of both the Illinois and United States Constitutions.

¶ 5    On February 9, 2021, the circuit court conducted a bench trial. The circuit court heard testimony from David Glaus, John Reed, Officer Joshua Fields, Officer Leland Rowland, and Ethan Borgmeyer. David Glaus testified that he is a self-employed contractor and that he was contacted in 2017 by Borgmeyer to look at a damaged door and give him

a written bid of the cost to repair the door, located at 403 East Main Street in Collinsville (property). Glaus stated that there was damage to the door frame and a crack in the door. According to Glaus, he would be required to repair the door frame and replace the door. When asked his opinion as to what caused the damage, Glaus stated, in part:

> "So, I've seen doors like this before. We've replaced many. This door was obviously rammed or kicked or something. But, you know, that's the only way that can happen. This is not from slamming a door. This isn't from anything like that. It's—it appeared to me, and I didn't ask, but it appeared to me that there had been a break-in."

Glaus's written bid estimated that it would cost $481 to repair the door.

¶ 6    John Reed testified that he was a resident at the property on March 9, 2017, and was present in his apartment that day. Reed stated that he lived in the apartment around the corner from the basement door. According to Reed, he heard a "loud crash" from the general area of the basement door, which was approximately 20 feet from his apartment door, so Reed exited his apartment to see what was going on. Reed testified that the basement door was always locked, so no one should have been down going towards the basement. Upon exiting his apartment, Reed observed one or two police officers standing near the door and believed that one or two more police officers were in the basement. Reed continued that he never heard any announcement that the police were there.

¶ 7    Reed further testified that "maybe five, ten seconds" had elapsed from the time he heard the loud crash to when he exited his apartment and saw the police officers. Although he could not remember the officer's name, Reed stated that he spoke with an officer who

informed him that they were looking for an individual. A minute or so later, Reed observed a "couple officers" exit the basement doorway. Reed acknowledged that none of the officers informed him that they had entered the basement door by force, and that he only saw the officers exiting the door. Reed then stated that he walked past the basement door "pretty much every day," that he did not notice anything different with the door prior to hearing the loud bang, but that after the loud bang, the door appeared to be "forced open" with damage to the door.

¶ 8    Upon cross-examination, Reed agreed that he was in his apartment when he heard the bang, that he did not witness whatever caused the bang, and therefore, did not know the cause of the bang. He reiterated that he had spoken with a police officer who asked his name. Reed also stated that at some point before he heard the bang, when he had checked his mail, the basement door was shut, and that after hearing the bang, when he came out of his apartment, the door was opened and damaged. Reed again acknowledged that he was not present when the door was damaged.

¶ 9    Officer Joshua Fields testified that he was employed by the Collinsville Police Department, and on March 9, 2017, he was conducting a follow-up investigation at the property regarding a battery that occurred the previous day. According to Officer Fields, he had spoken with the battery victim who lived at the property and was the girlfriend of the suspect. Officer Fields stated that he looked for the suspect in the victim's apartment as well as in other apartment units at the property. Officer Fields acknowledged there was a wooden door to the basement of the property and testified that he went into the basement but did not locate the suspect.

4

¶ 10    Officer Fields explained that the door to the basement was similar to the apartment door in the same alcove, so there was no way to know that the particular door went to the basement. He stated that he observed holes in the floors of other apartments, in particular one from which he could see the basement area but was unable to see what was in the basement due to the darkness. Officer Fields was unable to recall whether the basement door was open or closed but that the door must have been unlocked or the police officers would not have been able to enter the basement to "clear the area." He further explained that based upon the information they had received, the officers believed that the suspect was "jumping between apartments into the basement area, we were checking the exterior doors; and when we found that one unsecured, we proceeded to check the basement area that it led into."

¶ 11    Officer Fields testified that he and Officer Leland Rowland went into the basement area through the basement doorway. According to Officer Fields, he did not use force to open the basement door and did not witness Officer Rowland use any force on the door. Upon exiting the basement through the door, Officer Fields did not speak or question John Reed. Lastly, Officer Fields stated that he did not remember hearing any loud bangs in the vicinity of the basement door, but that it was possible there could have been.

¶ 12    The circuit court then asked defense counsel if he wished to question Officer Fields at that time or if counsel would call Officer Fields in the defendant's case in chief. The circuit court stated that since it was a small claims proceeding, the court suspected that plaintiffs' counsel would allow "a full scope of the inquiry if you wish to do it now." Defense counsel indicated that this procedure would be "expedential [*sic*] and great

5

better."[1] The circuit court then inquired if plaintiffs' counsel had any problem with this procedure, to which counsel answered: "No objection. Seems reasonable."

¶ 13   Upon questioning by defense counsel, Officer Fields reiterated that he did not use force to enter the basement or cause damage to the door, nor did he observe any other police officer do so. He further stated that he did not use a battering ram or any other type of battering device to gain access to the basement area. According to Officer Fields, he would not have entered the basement if the door had been secured or locked with some mechanism. On redirect examination, Officer Fields acknowledged that the City of Collinsville has a crime-free ordinance and a crime-free program that deals with apartment units. As part of this program, the Collinsville Police Department or the City of Collinsville has the telephone numbers of the landlords in the city. Officer Fields testified that on the date in question, he did not have the telephone numbers for either Borgmeyer or Hamann, but that obtaining those telephone numbers from the city would have only taken "a matter of several minutes."

¶ 14   The next witness to testify was Officer Leland Rowland, who stated that on March 9, 2017, he was employed by the Collinsville Police Department. Officer Rowland stated that he was with Officer Fields at the property that day, and that his recollection was that Officer Fields was the one who opened the door to the basement. It was also Officer Rowland's recollection that the door was unlocked since they went through it. He testified

---

[1]We note the transcript indicates that defense counsel stated: "I think that would be expedential and great better." We also note the proceedings were heard remotely via Zoom, which may cause some hearing or technical difficulties and, accordingly, construe counsel's response to mean "expediential and work better."

6

that neither he, Officer Fields, nor anyone else, used force to gain access to the basement door. When questioned further, Officer Rowland stated that he did not "recall hearing anything loud out of the ordinary." He testified that he recalled a female being present "in the beginning there" but that he did not remember seeing or speaking to anyone upon exiting the basement. As to the basement door, Officer Rowland stated that he did not remember seeing any damage to the basement door either prior to entering or exiting it.

¶ 15    Officer Rowland also acknowledged the City of Collinsville's crime-free ordinance and program that provides the telephone numbers of the landlords in the city. According to Officer Rowland, it would have probably taken "a couple minutes depending on how busy the dispatchers were" to obtain the landlord's telephone number. Officer Rowland agreed that he did not contact any of the property owners prior to entering the basement. When questioned why not, his response was: "I don't—I don't have a reason why." Upon cross-examination, Officer Rowland testified that: "I don't recall damaging any door, no. I remember going through a door, but not damaging it." Further, he did not have a battering ram or any other battering tool to force his way into the basement.

¶ 16    Ethan Borgmeyer testified that he and Matthew Hamann are co-owners of the property which was originally purchased by them as individuals but was now held by the corporation. Borgmeyer stated that although he works full-time, he is involved in the day-to-day operations of the property and that he was present at the property "probably every other day, every two days." Further, Borgmeyer testified that on March 9, 2017, it was brought to his attention "by a tenant that that they believed the door was kicked in and officers entered the basement." Borgmeyer confirmed that he was not present at the

7

property that day but received this information via a telephone call from John Reed. According to Borgmeyer, Reed reported hearing a "loud bang," exited his apartment, and observed police officers exiting the basement door.

¶ 17    Borgmeyer further testified that the basement was not used as a living space but rather for storage of belongings in the event of a tenant's eviction. Because of this, Borgmeyer continued, the door would be secure at all times since people's belongings were temporarily stored there. Borgmeyer stated that the door was old with an old doorknob mechanism and, therefore, they installed a clasp with a padlock that attached the door to the door frame, which was always locked. Additionally, Borgmeyer testified that he was "probably" present at the property on March 10, 2017, the day after the alleged incident, and observed the damage to the door and frame. He stated that the door was cracked, and there was damage to the door frame itself. As a result, Borgmeyer testified that after seeing the damage on March 10, 2017, he contacted David Glaus of Glaus Construction and received a repair estimate for the door and door frame.

¶ 18    Borgmeyer then testified that he did not receive any phone calls from anyone affiliated with the City of Collinsville or the Collinsville Police Department on March 9, 2017. He stated that in terms of what he was seeking to get out of this lawsuit, he was seeking the costs for the damage repair and the legal costs of the suit. On cross-examination, Borgmeyer acknowledged that he was not told by Reed that Reed saw the door damaged by the police officers, nor was Borgmeyer aware of anyone who saw a police officer use force upon the door that would have caused the damage to the locking device.

¶ 19    The plaintiffs then closed their case-in-chief. Thereafter, defense counsel stated that he had filed a motion for directed verdict (motion), that he did not have any further evidence to present, and that he was prepared to argue the motion. The circuit court indicated that it did not have a copy of the motion, to which defense counsel responded that it had been filed that same day. Defense counsel stated that he would email a copy to the circuit court. The court questioned plaintiffs' counsel about whether he had anything to add in closing argument. After some discussion by the circuit court and counsel regarding a response to the motion, plaintiffs' counsel ultimately did not object to the motion at that time and agreed to file a response to the motion within 14 days "in closing." The circuit court stated:

> "That's all right. If we're technical, it's directed findings at the close of plaintiff's case, but I've screwed that up procedurally by having everybody inquire of the witnesses during the full scope of examination. Nobody cares about that.
>
> I'm going to be treating it as a motion asking for the Court to essentially deny relief to the plaintiff just as if it was your closing argument. That's why I'm saying you've essentially got your closing argument on file. I'm giving [plaintiff's counsel] up to 14 days to file anything he wants in closing. And then given the fact you're actually the defendant, I would give you seven days to reply if you decide you want to reply to anything."

¶ 20    In closing, the circuit court instructed counsel to prepare a scheduling order showing that the matter was taken under advisement. That order was signed and filed by the circuit court on February 17, 2021, and stated, in part, "the Plaintiff shall file their Memorandum

9

in support of the Plaintiffs' case and/or opposition to the Defendant's Motion Directive [*sic*] Verdict within fourteen days *** the Defendant shall have seven days to reply to the Response filed by the Plaintiffs." The plaintiffs filed a response to the motion on February 9, 2021, later in the day after the bench trial. The plaintiffs' response argued similar theories as in this appeal, and, as an alternative, requested that the matter be transferred to the LM docket. The defendant did not file a response. On February 11, 2021, the circuit court entered its order denying the plaintiffs' claim and granting the defendant's motion "at the close of the case."

¶ 21    The plaintiffs now appeal, arguing: (1) that the circuit court erred by granting the defendant's motion, which is not permitted without leave of court pursuant to Illinois Supreme Court Rule 287 (eff. Aug. 1, 1992); (2) that the motion was prematurely filed, if it were even permitted to be filed; and (3) that the evidence was sufficient to defeat a motion for directed verdict.

¶ 22                                    II. ANALYSIS

¶ 23    On appeal, the plaintiffs raise three issues. First, whether the circuit court erred in granting the motion that was not permitted to be filed without leave of court pursuant to Illinois Supreme Court Rule 287 (eff. Aug. 1, 1992). Second, whether the defendant prematurely filed its motion, if it were permitted to be filed. Third, and lastly, whether the evidence presented at trial was sufficient to defeat the motion.

¶ 24                          A. Motion for Directed Verdict

¶ 25    Illinois Supreme Court Rules 281 through 289 govern the procedures for small claims proceedings. Ill. S. Ct. R. 281 (eff. Jan. 1, 2006); R. 282 (eff. Jan. 1, 2018); R. 283

10

(eff. Dec. 3, 1996); R. 284 (eff. Jan. 1, 2018); R. 285 (eff. Jan. 1, 1964); Rs. 286, 287 (eff. Aug. 1, 1992); R. 288 (eff. July 1, 1982); R. 289 (eff. Apr. 1, 2007). The purpose of the small claims rules is to provide an expeditious, simplified, and inexpensive procedure for the litigation of disputes involving small amounts. *Darwin Co. v. Sweeney*, 110 Ill. App. 3d 331, 333 (1982). Illinois Supreme Court Rule 287(b) (eff. Aug. 1, 1992) states: "Except as provided in sections 2-619 and 2-1001 of the Code of Civil Procedure, no motion shall be filed in small claims cases, without prior leave of court." The plaintiffs first argue that the defendant violated Rule 287(b) by failing to seek leave of court prior to filing its motion. In a related argument, the plaintiffs further contend that, even if allowed to file the motion, the defendant prematurely did so in violation of section 2-1110 of the Code of Civil Procedure (735 ILCS 5/2-1110 (West 2020)). The plaintiffs argue that the circuit court erred by treating the motion "as a motion asking for the court to essentially deny relief to the plaintiff just as if it was your closing argument."

¶ 26    In response to the plaintiffs' arguments, the defendant argues that the circuit court had jurisdiction to rule upon the motion regardless of whether the defendant had obtained leave of court to file its motion. The defendant, relying on *Besic v. Lattof Chevrolet, Inc.*, 2012 IL App (1st) 103185, contends that obtaining leave pursuant to Rule 287(b) does not rise to a jurisdictional requirement, and in support of this argument, the defendant points to the "Committee Comments" of the rule. See Ill. S. Ct. R. 287, Committee Comments (adopted Aug. 1, 1987).

¶ 27    In *Besic*, the First District held that the plaintiff's filing of a posttrial motion without first seeking leave of court to file that motion, as required by Rule 287(b), did not rise to a

11

jurisdictional defect and that the trial court had jurisdiction to rule on the posttrial motion. *Besic*, 2012 IL App (1st) 103185, ¶¶ 2-3. In reaching this decision, the First District emphasized the "Committee Comments" of the rule, which state that the purpose of Rule 287(b) is to simplify procedures and reduce litigation costs. *Id*. ¶ 3; see also Ill. S. Ct. R. 287, Committee Comments (adopted Aug. 1, 1987). Thus, the court reasoned that this purpose would be frustrated by concluding that the error constituted a jurisdictional defect. *Id*. ¶ 3. As a result, the First District remanded to allow the trial court to exercise its discretion in ruling on whether to allow the plaintiff's posttrial motion to be filed. *Id*. ¶ 4.

¶ 28 The defendant further contends that even if the motion was considered without specific leave of court, it was within the circuit court's discretion to consider the motion as the defendant's closing argument at trial. We agree.

¶ 29 We begin our analysis by noting that this court may affirm a circuit court's ultimate ruling on any basis supported by the record. See, *e.g.*, *Evans v. Lima Lima Flight Team, Inc.*, 373 Ill. App. 3d 407, 418 (2007); *People v. Johnson*, 208 Ill. 2d 118, 134 (2003). This is because the question before us on appeal is the correctness of the result reached by the circuit court, rather than the correctness of the reasoning upon which that result was reached. *Johnson*, 208 Ill. 2d at 128.

¶ 30 On the same day that the bench trial was held in this matter, February 9, 2021, the defendant filed its motion. As the circuit court noted, both parties inquired of the witnesses after the motion was filed. At the close of the proceedings, counsel for the defendant informed the circuit court that he had filed the motion. At that time, neither the circuit court nor plaintiffs' counsel had the opportunity to review the motion. As a result, the circuit

12

court and counsel had a discussion regarding the motion. Plaintiffs' counsel did not object to the motion at that time and agreed to file a response to the motion within 14 days "in closing." The circuit court stated:

> "That's all right. If we're technical, it's directed findings at the close of plaintiff's case, but I've screwed that up procedurally by having everybody inquire of the witnesses during the full scope of examination. Nobody cares about that.
>
> I'm going to be treating it as a motion asking for the Court to essentially deny relief to the plaintiff *just as if it was your closing argument. That's why I'm saying you've essentially got your closing argument on file*. I'm giving [plaintiff's counsel] up to 14 days *to file anything he wants in closing*. And then given the fact you're actually the defendant, I would give you seven days to reply if you decide you want to reply to anything." (Emphases added.)

¶ 31    In closing, the circuit court instructed counsel to prepare a scheduling order showing that the matter was taken under advisement. That order was signed and filed by the circuit court on February 17, 2021, and stated, in part, "the Plaintiff shall file their Memorandum in support of the Plaintiffs' case and/or opposition to the Defendant's Motion Directive [*sic*] Verdict within fourteen days *** the Defendant shall have seven days to reply to the Response filed by the Plaintiffs." However, as indicated above, the plaintiffs filed a response to the motion on February 9, 2021, later in the day after the bench trial. The plaintiffs' response argued similar theories as in this appeal, and, as an alternative, requested that the matter be transferred to the LM docket. The defendant did not file a

13

response. On February 11, 2021, the circuit court entered its order denying the plaintiffs' claim and granting the defendant's motion "at the close of the case."

¶ 32    Although a judge's written order is evidence of the judgment of the circuit court, the judge's oral pronouncement is the judgment of the court. *People v. Carlisle*, 2015 IL App (1st) 131144, ¶ 87. Thus, when the judge's oral pronouncement and the written order are in conflict, the oral pronouncement controls. *Id*. Moreover, the small claims act vests a circuit court judge with a great deal of discretion in regard to the ordering of pleadings. See, *e.g.*, *Peoria Housing Authority v. Roberson*, 74 Ill. App. 3d 326, 329 (1979).

¶ 33    In the case at bar, although the circuit court's order of February 11, 2021, stated, in relevant part, that "Defendant's Motion for Directed Verdict (Directed Findings) is hereby granted at the close of the case. Claim Denied. Close file," because the circuit court made an oral pronouncement that it would be treating the defendant's motion as defendant's closing argument at the end of the bench trial, the oral pronouncement controls. *Carlisle*, 2015 IL App (1st) 131144, ¶ 87. Thus, the rules governing the filing of motions for directed verdict are inapplicable here.

¶ 34    The plaintiffs argue that the circuit court erred by treating the motion "as a motion asking for the court to essentially deny relief to the plaintiff just as if it was your closing argument" because the motion "was not properly before it." However, the question before this court is not whether the circuit court erred in granting the defendant's motion for directed verdict, rather; the question before this court is whether the circuit court's treatment of the motion, *i.e.*, as the defendant's closing argument, was proper. Because a circuit court judge in a small claims matter has discretion in regard to the ordering of

pleadings (see, *e.g.*, *Roberson*, 74 Ill. App. 3d at 329), we find that the circuit court's consideration and treatment of the defendant's motion as the defendant's closing argument at trial was properly within the circuit court's discretion. Thus, the plaintiffs' first two arguments, which focused on motion practice in small claims proceedings and in nonjury cases, are moot.

¶ 35    As a final note on this issue, we find that neither party was prejudiced by the circuit court's consideration and treatment of the motion as the defendant's closing argument at trial because in a civil, nonjury proceeding, oral closing argument is a privilege, not a right, and is accorded to the parties by the circuit court in its discretion. See *Korbelik v. Staschke*, 232 Ill. App. 3d 114, 118-19 (1992). Moreover, the plaintiffs were afforded the opportunity to respond to the motion and *did* respond by filing a written response.

¶ 36                              B. Sufficiency of the Evidence

¶ 37    Lastly, the plaintiffs argue that the evidence presented at trial was sufficient to defeat the defendant's motion for directed verdict. The plaintiffs contend that the circuit court erred "when it jumped to step two of the directed verdict analysis by treating the motion for directed verdict 'as if it was [the City of Collinsville's] closing argument.' " In response, the defendant argues that the evidence presented at trial was sufficient to support the circuit court's granting of the defendant's motion.

¶ 38    As noted above, the rules governing the filing of motions for directed verdict are inapplicable here. At the close of the bench trial, the circuit court orally pronounced that it would be considering the defendant's motion as its closing argument at trial, allowed the plaintiffs to file a response to the defendant's motion, took the matter under advisement,

15

considered whether the plaintiffs properly established a section 1983 claim at trial, and then issued its written order dismissing the plaintiffs' claim. Consequently, the question before this court is whether the evidence the plaintiffs presented at trial was sufficient to prove a section 1983 claim.

¶ 39    "Generally speaking, the standard of review we apply when a party challenges a trial court's bench-trial ruling is whether the trial court's judgment is contrary to the manifest weight of the evidence." *Jackson v. Bowers*, 314 Ill. App. 3d 813, 818 (2000). "A judgment is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the finding is unreasonable, arbitrary, or not based on the evidence presented." (Internal quotation marks omitted.) *Bangaly v. Baggiani*, 2014 IL App (1st) 123760, ¶ 142.

¶ 40    We first note the lack of authority in the plaintiffs' brief on the issue of whether the evidence the plaintiffs presented at trial was sufficient to prove their section 1983 claim. As the defendant points out, the plaintiffs' brief cites two cases from the State of Minnesota in support of their argument that the City of Collinsville should be held liable under section 1983 for damage to the premises allegedly caused by police officers during a search. See *McGovern v. City of Minneapolis*, 480 N.W.2d 121 (Minn. Ct. App. 1992); *Wegner v. Milwaukee Mutual Insurance Co.*, 479 N.W.2d 38 (Minn. 1991). Those cases cited by the plaintiffs are not binding authority on this court and, as such, the plaintiffs fail to cite any controlling precedent in support of this issue. See *In re Scarlett Z.-D.*, 2015 IL 117904, ¶ 55 ("decisions from our sister state courts are not binding on the courts of this state").

16

¶ 41    All three counts of the plaintiffs' complaint alleged a violation of 42 U.S.C. § 1983. The plaintiffs argue that the evidence adduced at trial was sufficient for the circuit court to find that the plaintiffs proved, by a preponderance of the evidence, both (1) a deprivation of their fifth amendment (U.S. Const., amend. V) rights and (2) that the police officers who deprived the plaintiffs of that right acted under color of state law. See *West v. Atkins*, 487 U.S. 42, 48 (1988) (recognizing that, in order to state claim under section 1983, the plaintiff must allege a violation of a right secured by the Constitution and laws of the United States and must show that alleged deprivation was committed by person acting under color of state law). To reiterate, however, the only named defendant was the City of Collinsville. As the defendant correctly points out, a municipality may be sued directly under section 1983 for constitutional deprivations inflicted upon individuals pursuant to a government policy or custom where a sufficient causal link exists between the policy or custom and the deprivation. *DeBow v. City of East St. Louis*, 158 Ill. App. 3d 27, 42-43 (1987); *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690-95 (1978). "[I]t is when the execution of a government's policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. Additionally, the plaintiffs must establish fault beyond mere negligence on the part of the city in establishing the policy or custom. *Daniels v. Williams*, 474 U.S. 327, 330 (1986); see also *Jones v. City of Chicago*, 787 F.2d 200, 203 (7th Cir. 1986).

¶ 42    We agree with the defendant that the plaintiffs failed to present any evidence at trial to establish that either a policy or custom of the City of Collinsville resulted in the damage

17

to the property. Pursuant to section 1983, the plaintiffs were required to prove that they were deprived of a constitutional right. 42 U.S.C. § 1983. In order to sue a municipality directly under section 1983, the plaintiffs were required to establish a sufficient causal link between a policy or custom of the city and the deprivation. *DeBow*, 158 Ill. App. 3d at 42-43; *Monell*, 436 U.S. at 690-95. After carefully reviewing the record, we conclude that the plaintiffs' evidence does not give rise to an inference of fault so as to render the City of Collinsville liable under section 1983. There was no direct evidence that either Officer Fields or Officer Rowland caused the damage that was alleged to have been done to the door located on the property owned by the plaintiffs. And even if we were to assume that the plaintiffs met their burden establishing that Officer Fields and Officer Rowland caused the damage, the plaintiffs fail to cite to any controlling precedent which would lead us to conclude that the damage constitutes a compensable constitutional "taking" of property by a governmental agency in violation of both the Illinois and United States Constitutions. Moreover, there was no direct evidence that the City of Collinsville was responsible for the damage to the door. Consequently, the plaintiffs failed to prove that either Officer Fields or Officer Rowland deprived the plaintiffs of their fifth amendment (U.S. Const., amend. V) rights pursuant to a government policy or custom where a sufficient causal link exists between the policy or custom and the deprivation.

¶ 43    Thus, where the plaintiffs failed to prove, by a preponderance of the evidence, who damaged the property, and therefore failed to tie any destruction of property directly to the City of Collinsville, we cannot say that the circuit court's judgment finding as much was against the manifest weight of the evidence. The opposite conclusion is *not* clearly evident.

18

Accordingly, we find no reason to disturb the circuit court's ruling denying the plaintiffs' claim, and the circuit court's ruling is therefore affirmed.

¶ 44                                    III. CONCLUSION

¶ 45    For the foregoing reasons, we affirm the judgment of the circuit court of Madison County.


¶ 46    Affirmed.